IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* THE PMI GROUP, INC. SECURITIES LITIGATION _____/ THIS DOCUMENT RELATES TO ALL ACTIONS _____/ | No. C 08-1405 SI **ORDER DENYING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Defendants' motion to dismiss the first amended complaint is scheduled for a hearing on November 13, 2009. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument. For the reasons set forth below, the Court DENIES defendants' motion. The Court will hold a case management conference on **December 16, 2009** at **2:30 pm.**

## DISCUSSION[1]

Plaintiffs filed this securities fraud class action on behalf of all persons who purchased or otherwise acquired the common stock of The PMI Group, Inc. ("PMI") between November 2, 2006 and March 3, 2008, against PMI and certain of its officers and directors.[2] Plaintiffs allege violations of the Securities Exchange Act of 1934. PMI, through its subsidiaries, "provides credit enhancement products designed to promote homeownership and facilitate mortgage transactions in the capital markets in the United States, Australia, New Zealand, and the European Union." First Amended Compl. ("FAC") ¶ 1.

---

[1] The Court incorporates by reference the detailed background set forth in the July 1, 2009 order.

[2] The individual defendants are L. Stephen Smith, Bradley M. Shuster, David H. Katkov, and Donald P. Lofe, Jr.

Plaintiffs allege that although PMI had historically been a conservative insurer of full documentation home mortgages, as PMI became marginalized during the housing boom of the early 2000s, PMI began to insure high-risk loan products, and also purchased a controlling share in Financial Guaranty Insurance Company, Inc. ("FGIC"), a company that guaranteed subprime residential mortgage backed securities. The gravamen of the complaint is that "defendants abandoned PMI's core principles and tied the Company's growth plan [to] insuring high risk mortgage loans and exposing its investors to even higher risk structured finance transactions," and that even as defendants were aware of PMI's mounting losses as the housing market began to crash, defendants continued to assure the market that PMI was closely monitoring and evaluating risk.

In an order filed July 1, 2009, the Court granted in part and denied in part defendants' motion to dismiss the consolidated complaint. The Court held that the complaint sufficiently alleged that defendants made material false and misleading statements about PMI's prudent and careful risk management, as well as PMI's reporting of reserves for losses and PMI's losses in its investment in FGIC. The Court also held that the complaint adequately alleged loss causation up to January 18, 2008.[3] However, the Court held that the complaint did not allege a strong inference of scienter because plaintiffs did not allege particular facts showing that defendants were aware that the statements at issue were false or misleading when made. Specifically, the Court found that the complaint did not allege that any individual defendant was aware of the problems with PMI's loan portfolio, that PMI's delegated underwriters were not adhering to PMI's underwriting standards, and that FGIC was in trouble. The Court also held that because the consolidated complaint did not adequately allege a primary violation of federal securities laws, there was no basis for control person liability.

On July 27, 2009, plaintiffs filed a first amended complaint. The FAC differs from the original complaint in a number of ways. The FAC clarifies that the scienter allegations are based in large part

---

[3] Although the consolidated complaint alleged a class period ending March 3, 2008, the consolidated complaint alleged that "As a direct result of defendants' admission and the public revelations regarding the truth about PMI's overstatement of its financial outlook and its actual business prospects going forward, PMI's stock plummeted over 87% . . . on January 18, 2008. This drop removed the inflation from PMI's stock price . . . ." Consol. Compl. ¶ 198. The FAC also alleges a class period ending March 3, 2008, and contains a similar allegation about the "removal of inflation" from PMI's stock price on January 18, 2008. *See* FAC ¶ 235.

2

on defendants' own admissions about their intimate and day-to-day involvement in PMI's operations. *See* FAC ¶¶ 65-69. Plaintiffs have supplemented their allegations regarding previous confidential witnesses and added three new confidential witnesses. Plaintiffs have also included additional allegations about the four individual defendants' positions and responsibilities, including their responsibilities with respect to FGIC. The amended complaint contains new details about PMI's "risk layering," which exposed PMI to increased risk of borrower default, and which allegedly was not disclosed to investors until after PMI filed its 2007 Form 10-K with the SEC after the class period. Finally, the FAC includes new allegations about a lawsuit between PMI and one of its delegated underwriters, Indymac, which allegedly show that PMI (and defendant Katkov) were aware of Indymac's failure to adhere to proper underwriting guidelines.

Defendants move to dismiss the first amended complaint on four grounds. First, defendants contend that plaintiffs still have not alleged scienter. Second, defendants contend that defendants' statements are forward-looking and protected by the PSLRA's safe harbor and the bespeaks caution doctrine. Third, defendants contend that, notwithstanding the Court's prior order, the amended complaint does not allege loss causation. Finally, defendants argue that the amended complaint fails to plead control person liability.

## I. Scienter

"[T]o adequately plead scienter, the complaint must [] 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Zucco Partners*, 552 F.3d at 991. The inquiry "is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Inc.,* 551 U.S. 308, 127 S. Ct. 2499, 2509 (2007) (emphasis in original). "[T]he inference of scienter must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations." *Id.* at 2510 (internal quotation marks omitted). "To adequately demonstrate that the defendant acted with the required state of mind, a complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *Zucco Partners*, 552 F.3d at 991. The Ninth

3

Circuit has instructed that "following *Tellabs*, we will conduct a dual inquiry: first, we will determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegations are sufficient, we will conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id*. at 992.

The Court finds that plaintiffs have cured the deficiencies identified in the previous complaint and that the FAC sufficiently alleges a strong inference of scienter. The FAC alleges that throughout the class period PMI generated internal reports to specifically evaluate the company's credit risk and potential losses from mortgage defaults, and that these reports showed that PMI's delegated underwriters were regularly performing below PMI's established standards and that PMI's portfolio was suffering mounting losses. The FAC alleges through new confidential witnesses that the individual defendants were aware of these problems. The FAC also contains new allegations about defendants' management and oversight of FGIC, including their obligations as members of the FGIC audit committee, and that through these positions the individual defendants had both access to and a duty to know about the losses at FGIC. The FAC also alleges that rather than disclosing the problems, "[i]n nearly every conference call from the start of the Class Period until PMI finally admitted the losses, defendants (all of whom were on the conference calls) repeatedly acknowledged that credit quality was critical to PMI's success and that they were directly involved with determining PMI risk management." FAC ¶ 7 These allegations, taken collectively, establish a strong inference of scienter.

## II. Safe harbor/bespeaks caution doctrine

Defendants also contend that all forward-looking statements cited in the amended complaint were accompanied by meaningful cautionary language and are therefore inactionable as a matter of law under the PSLRA's safe harbor and the "bespeaks caution" doctrine. Forward-looking statements, which include "a statement of the plans and objectives of management," a statement "of future economic performance," and a statement "containing a projection of revenues," 15 U.S.C. § 78u-5(i)(1), enjoy special protection under the PSLRA. "A forward-looking statement qualifies for the PSLRA 'safe harbor' and is not actionable if either of the following two conditions is true: (A) the statement is

accompanied by 'meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement'; or (B) plaintiffs fail to establish that the statement was 'made with actual knowledge . . . that the statement was false or misleading.'" *In re iPass, Inc. Sec. Litig.*, 2006 WL 496046 *5 (N.D. Cal. Feb. 28, 2006). Similarly, the "bespeaks caution" doctrine provides a mechanism by which a court as a matter of law may determine that defendant's forward-looking representations contain enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud. *See Provenz v. Miller,* 102 F.3d 1478, 1487 (9th Cir. 1996). This doctrine provides that statements must be analyzed "in context," must "be precise," and must "directly address the future defendant's projections." *Id*. at 1493.

Here, many of the statements alleged to be false or misleading are not forward-looking, but are unprotected statements of then-existing fact regarding the quality of PMI's book of business and PMI's underwriting and risk management practices. Those statements that are forward-looking and accompanied by cautionary language are also not immunized because plaintiffs have alleged facts suggesting that defendants had actual knowledge of the falsity of their statements.

### III. Loss causation

Defendants contend that the FAC does not plead loss causation, i.e., that the "truth" regarding any of the alleged misrepresentations was subsequently revealed to the market and caused PMI's stock price to decline. Defendants' arguments are identical to those raised in the previous motion to dismiss. The Court's July 1, 2009 order found that the complaint sufficiently alleged loss causation up to January 18, 2008, and noted that the Ninth Circuit has recently emphasized that a plaintiff must only allege "facts that, if taken as true, plausibly establish loss causation." *In re Gilead Scis. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008). As with the prior complaint, the FAC sufficiently alleges loss causation through January 18, 2008.

### IV. Control person liability

Defendants contend that the control person allegations are deficient because plaintiffs have failed to allege a primary violation of Section 10(b). For the reasons stated above, the Court finds that the

5

FAC sufficiently alleges a violation of Section 10(b). In addition, the FAC contains detailed allegations about each of the individual defendants' high-ranking positions and responsibilities. *See* FAC ¶¶ 14-20. Plaintiffs have adequately alleged that the individual defendants "exercised actual power or control over the primary violator." *Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000). Moreover, "[w]hether the defendant is a controlling person is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions," and thus that these determinations are inappropriate at the pleading stage." *Id.*

## CONCLUSION

For the reasons stated above, the Court DENIES defendants' motion to dismiss the first amended complaint. (Docket No. 51). The Court GRANTS defendants' request for judicial notice. (Docket No. 52). The Court will hold a case management conference on **December 16, 2009** at **2:30 pm**.

**IT IS SO ORDERED.**

Dated: November 2, 2009

SUSAN ILLSTON
United States District Judge