ROBBINS GELLER RUDMAN
   & DOWD LLP
DANIEL S. DROSMAN (200643)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
     – and –
DANIEL J. PFEFFERBAUM (248631)
PHILLIP G. FREEMON (242062)
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)
dpfefferbaum@rgrdlaw.com
gfreemon@rgrdlaw.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re THE PMI GROUP, INC. SECURITIES LITIGATION | ) ) ) | Master File No. 3:08-cv-01405-SI |
| This Document Relates To: | ) ) ) ) | CLASS ACTION |
| ALL ACTIONS. | ) ) ) ) | PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION |

DATE:          August 13, 2010
TIME:          9:00 a.m.
COURTROOM: The Honorable Susan Illston

516206_1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 1

I.     INTRODUCTION ............................................................................... 1

II.    FACTUAL SUMMARY ................................................................... 3

III.   ARGUMENT ....................................................................................... 7

     A.    This Case Appropriately Calls for Class Action Treatment Under Rule 23 ............ 7

     B.    The Proposed Class Satisfies the Prerequisites of Rule 23(a) ..................... 9

         1.    The Class Is so Numerous that Joinder of All Members of the Class Is Impracticable ......................... 10

         2.    Questions of Law and Fact Are Common to Members of the Class ........ 11

         3.    Plaintiff's Claims Are Typical of Those of the Class ............................... 14

         4.    Plaintiff Will Fairly and Adequately Protect the Interests of the Class Members ......................... 16

     C.    The Proposed Class Satisfies Rule 23(b)(3) ........................................ 18

         1.    Common Questions of Law and Fact Predominate over Individual Questions .................... 18

         2.    A Class Action Is Superior to Other Available Methods for Resolving This Controversy ................. 22

IV.   CONCLUSION ................................................................................ 25

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI

- i -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page

## CASES

*A & J Deutscher Family Fund v. Bullard*,
    No. CV 85-1850-PAR, 1986 U.S. Dist. LEXIS 20054
    (C.D. Cal. Sept. 22, 1986)............................................................14

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) .......................................................15

*Arnold v. United Artists Theatre Circuit*,
    158 F.R.D. 439 (N.D. Cal. 1994)..................................................10

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)............................................................2, 8, 19

*Binder v. Gillespie*,
    184 F.3d 1059 (9th Cir. 1999) ...............................................19, 20

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ............................................. *passim*

*Blatt v. Muse Techs., Inc.*,
    No. 01-11010-DPW, 2002 U.S. Dist. LEXIS 18466
    (D. Mass. Aug. 27, 2002)............................................................21

*Brady v. Lac, Inc.*,
    72 F.R.D. 22 (S.D.N.Y. 1976) .....................................................11

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989)......................................20, 21, 22

*Carpenter v. Davis*,
    424 F.2d 257 (5th Cir. 1970) .......................................................11

*Cheney v. Cyberguard Corp.*,
    213 F.R.D. 484 (S.D. Fla. 2003)..................................................21

*Crossen v. CV Therapeutics*,
    No. C 03-03709 SI, 2005 U.S. Dist. LEXIS 41396
    (N.D. Cal. Aug. 10, 2005)..........................................................2, 9

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980)....................................................................24

*Dukes v. Wal-Mart Stores, Inc.*,
    No. 04-16688, 2010 U.S. App. LEXIS 8576
    (9th Cir. Apr. 26, 2010) ..........................................8, 9, 12, 14

1

2                                                                                              **Page**

3   *Dura Pharms., Inc. v. Broudo,*
            544 U.S. 336 (2005)................................................................................9

4

5   *Dura-Bilt Corp. v. Chase Manhattan Corp.,*
            89 F.R.D. 87 (S.D.N.Y. 1981) .........................................................18

6   *Eisen v. Carlisle & Jacquelin,*
            391 F.2d 555 (2d Cir. 1968)............................................................16

7

8   *Epitope, Inc., Sec. Litig.,*
            No. 92-759-RE, 1992 U.S. Dist. LEXIS 22705

9           (D. Or. Nov. 30, 1992)...................................................................16

10  *Epstein v. MCA, Inc.,*
            50 F.3d 644 (9th Cir. 1995) ...........................................7, 18, 23, 24

11

12  *Freedman v. Louisiana-Pacific Corp.,*
            922 F. Supp. 377 (D. Or. 1996) ................................................11, 18

13  *Gen. Tel. Co. of the Sw. v. Falcon,*
            457 U.S. 147 (1982)..........................................................................8

14

15  *Genden v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,*
            114 F.R.D. 48 (S.D.N.Y. 1987) .......................................................18

16  *Greenspan v. Brassler,*
            78 F.R.D. 130 (S.D.N.Y. 1978) .......................................................10

17

18  *Haley v. Medtronic, Inc.,*
            169 F.R.D. 643 (C.D. Cal. 1996) .....................................................12

19

20  *Hanlon v. Chrysler Corp.,*
            150 F.3d 1011 (9th Cir. 1998) ....................................................12, 14

21  *Hanon v. Dataproducts Corp.,*
            976 F.2d 497 (9th Cir. 1992) ...........................................................14

22

23  *Harris v. Palm Springs Alpine Estates, Inc.,*
            329 F.2d 909 (9th Cir. 1964) ........................................................2, 10

24  *Hernandez v. Alexander,*
            152 F.R.D. 192 (D. Nev. 1993).....................................................9, 18

25

26  *In re 2TheMart.com, Inc. Sec. Litig.,*
            114 F. Supp. 2d 955 (C.D. Cal. 2000) .............................................20

27

28  *In re Accelr8 Tech. Corp. Sec. Litig.,*
            147 F. Supp. 2d 1049 (D. Colo. 2001) .............................................21

**Page**

*In re Accredo Health, Inc.*,
    No. 03-2216 DP, 2006 U.S. Dist. LEXIS 97621
    (W.D. Tenn. Mar. 7, 2006) ...............................................................................22

*In re Adobe Sys., Inc. Sec. Litig.*,
    139 F.R.D. 150 (N.D. Cal. 1991)...........................................................................7

*In re Alco Int'l Group, Sec. Litig.*,
    158 F.R.D. 152 (S.D. Cal. 1994) ................................................................ *passim*

*In re Am. Med. Sys.*,
    75 F.3d 1069 (6th Cir. 1996) ..............................................................................12

*In re Amerifirst Sec. Litig.*,
    139 F.R.D. 423 (S.D. Fla. 1991).........................................................................21

*In re Applied Micro Circuits Corp. Sec. Litig.*,
    No. 01CV0649 K (AJB), 2003 U.S. Dist. LEXIS 14492
    (S.D. Cal. July 15, 2003)......................................................................................19

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) .......................................................................7, 11

*In re Cirrus Logic Sec.*,
    155 F.R.D. 654 (N.D. Cal. 1994).............................................................10, 13, 14

*In re Connectics Corp., Sec. Litig.*,
    257 F.R.D. 572 (N.D. Cal. 2009).............................................................. *passim*

*In re Cooper Cos. Sec. Litig.*,
    No. SACV 06-00169-CJC(RNBx), 2009 U.S. Dist. LEXIS 3244
    (C.D. Cal. Jan. 6, 2009) ......................................................................................14

*In re DJ Orthopedics, Inc.*,
    No. 01-CV-2238-K (RBB), 2003 U.S. Dist. LEXIS 21534
    (S.D. Cal. Nov. 17, 2003) .........................................................................14, 22, 23

*In re Emulex Corp.*,
    210 F.R.D. 717 (C.D. Cal. 2002).....................................................................10, 19

*In re HealthSouth Corp. Sec. Litig.*,
    257 F.R.D. 260 (N.D. Ala. 2009).........................................................................20

*In re Indep. Energy Holdings PLC, Sec. Litig.*,
    210 F.R.D. 476 (S.D.N.Y. 2002) ........................................................................18

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN       - iv -
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI

1

2                                                                    **Page**

3    *In re Infineon Techs. AG Sec. Litig.*,
         No. C 04-04156 JW, 2009 U.S. Dist. LEXIS 103385
4        (N.D. Cal. Mar. 6, 2009) .................................................................................14

5    *In re Jackpot Enters. Sec. Litig.*,
         No. CV-S-89-805-LDG(RJJ), 1991 U.S. Dist. LEXIS 16353
6        (D. Nev. Mar. 28, 1991) ..................................................................................13

7    *In re LDK Solar Sec. Litig.*,
         255 F.R.D. 519 (N.D. Cal. 2009) .....................................................................20
8

9    *In re MDC Holdings Sec. Litig.*,
         754 F. Supp. 785 (S.D. Cal. 1990) ...................................................................12
10

     *In re Memorex Sec. Cases*,
11       61 F.R.D. 88 (N.D. Cal. 1973) .........................................................................18

12   *In re Micron Techs., Inc.*,
         247 F.R.D. 627 (D. Idaho 2007) ......................................................................14
13

14   *In re NetBank, Inc.*,
         259 F.R.D. 656 (N.D. Ga. 2009) ......................................................................21

15   *In re Penn Cent. Sec. Litig.*,
         62 F.R.D. 181 (E.D. Pa. 1974) .........................................................................11
16

17   *In re Res. Am. Sec. Litig.*,
         202 F.R.D. 177 (E.D. Pa. 2001) .......................................................................21

18   *In re Seagate Tech. II Sec. Litig.*,
         843 F. Supp. 1341 (N.D. Cal. 1994) ...................................................................7
19

20   *In re Seagate Techs. Sec. Litig.*,
         115 F.R.D. 264 (N.D. Cal. 1987) .....................................................................11
21

22   *In re Sugar Indus. Antitrust Litig.*,
         No. 201, 1976 U.S. Dist. LEXIS 14955
23       (N.D. Cal. May 21, 1976) ................................................................................24

24   *In re THQ, Inc. Sec. Litig.*,
         No. CV 00-1783 AHM (Ex), 2002 U.S. Dist. LEXIS 7753
25       (C.D. Cal. Mar. 22, 2002) ..........................................................................7, 12

26   *In re Turbodyne Techs., Inc. Sec. Litig.*,
         No. CV 99-00697 MMM, 2002 U.S. Dist. LEXIS 25738
27       (C.D. Cal. Mar. 15, 2002) ................................................................................21

28

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI                    - v -

1

2                                                                                          **Page**

3  *In re Unioil Sec. Litig.*,
          107 F.R.D. 615 (C.D. Cal. 1985) ........................................................................13, 19
4

   *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*,
5         122 F.R.D. 251 (C.D. Cal. 1988) .............................................................9, 13, 16, 19

6  *In re Verisign, Inc. Sec. Litig.*,
          No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438
7         (N.D. Cal. Jan. 13, 2005) ......................................................................10, 11, 13

8  *In re Worlds of Wonder Sec. Litig.*,
          No. C 87 5491 SC, 1990 U.S. Dist. LEXIS 8511
9         (N.D. Cal. Mar. 26, 1990) .............................................................................2, 10

10 *J. I. Case Co. v. Borak*,
          377 U.S. 426 (1964) ...........................................................................................8
11

12 *Jacobs v. Paul Hardeman, Inc.*,
          42 F.R.D. 595 (S.D.N.Y. 1967) ........................................................................11
13

   *Knapp v. Gomez*,
14        No. 87-0067-H(M), 1991 U.S. Dist. LEXIS 11012
          (S.D. Cal. June 26, 1991) ..................................................................................23
15

16 *Lerwill v. Inflight Motion Pictures, Inc.*,
          582 F.2d 507 (9th Cir. 1978) ............................................................................16
17

   *Levine v. SkyMall, Inc.*,
18        No. CIV 99-166-PHX-ROS, 2001 U.S. Dist. LEXIS 24705
          (D. Ariz. May 24, 2001).....................................................................................21
19

20 *Lubin v. Sybedon Corp.*,
          688 F. Supp. 1425 (S.D. Cal. 1988).................................................................17

21 *Matsushita Elec. Indus. Co. v. Epstein*,
          516 U.S. 367 (1996).............................................................................................7
22

23 *McPhail v. First Command Fin. Planning, Inc.*,
          247 F.R.D. 598 (S.D. Cal. 2007) .......................................................................7

24 *Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*,
          611 F. Supp. 990 (C.D. Cal. 1984)...................................................................10
25

26 *Schaefer v. Overland Express Family of Funds*,
          169 F.R.D. 124 (S.D. Cal. 1996) ...............................................................*passim*

27

28

1

2                                                                    **Page**

3  *Schlagal v. Learning Tree Int'l*,
       No. CV 98-6384 ABC (Ex), 1999 U.S. Dist. LEXIS 2157
4      (C.D. Cal. Feb. 23, 1999) ................................................................15

5  *Schlanger v. Four-Phase Sys., Inc.*,
       555 F. Supp. 535 (S.D.N.Y. 1982) .............................................19
6

7  *Schneider v. Traweek*,
       No. CV 88-0905 RG, 1990 U.S. Dist. LEXIS 15596
8      (C.D. Cal. Aug. 7, 1990) ................................................7, 12, 13, 14

9  *Schwartz v. Harp*,
       108 F.R.D. 279 (C.D. Cal. 1985) ....................................10, 13
10

11 *Sherman v. Griepentrog*,
       775 F. Supp. 1383 (D. Nev. 1991) ..............................................11

12 *Tatz v. Nanophase Techs. Corp.*,
       No. 01 C 8840, 2003 U.S. Dist. LEXIS 9982
13     (N.D. Ill. June 12, 2003) ...........................................................21

14 *Trattner v. Am. Fletcher Mortgage Investors*,
       74 F.R.D. 352 (S.D. Ind. 1976) ................................................10
15

16 *Weeks v. Bareco Oil Co.*,
       125 F.2d 84 (7th Cir. 1941) .......................................................23

17 *Wehner v. Syntex Corp.*,
       117 F.R.D. 641 (N.D. Cal. 1987) ........................................10, 11
18

19 *Weinberger v. Jackson*,
       102 F.R.D. 839 (N.D. Cal. 1984) ....................................11, 15, 17
20

21 *Yaffe v. Powers*,
       454 F.2d 1362 (1st Cir. 1972) ....................................................24

22 *Yamner v. Boich*,
       No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849
23     (N.D. Cal. Sept. 15, 1994) ...........................................7, 10, 15

24 **STATUTES, RULES AND REGULATIONS**

25 15 U.S.C.
       §78j(b) ...........................................................................................2, 3
26     §78t(a) ...........................................................................................2, 3
       §78u-4(a)(3)(B) ................................................................................2
27

28

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN        - vii -
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI

1

2                                                                                                        **Page**

3   Federal Rules of Civil Procedure

        Rule 23 ......................................................................................................... *passim*
4       Rule 23(a).............................................................................................1, 9, 11, 18
        Rule 23(a)(1) ..........................................................................................................10
5       Rule 23(a)(2).............................................................................................8, 11, 12, 14
        Rule 23(a)(3)..........................................................................................................14, 15
6       Rule 23(a)(4)..........................................................................................................16, 18
        Rule 23(b) ..............................................................................................................18
7       Rule 23(b)(3)......................................................................................................... *passim*
        Rule 23(g) ..............................................................................................................17
8

9   17 C.F.R.
        §240.10b-5 .........................................................................................................3, 4, 5, 6
10

11  **LEGISLATIVE HISTORY**

12  Private Securities Litigation Reform Act of 1995,
        H.R. Conf. Rep. No. 104-369 (1995),
13
        *reprinted in* 1995 U.S.C.C.A.N. 730 ..................................................................8

14  **SECONDARY AUTHORITIES**

15  5 Herbert B. Newberg & Alba Conte,
    *Newberg on Class Actions*  (1977)
16
        §8816..........................................................................................................................15

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, on August 13, 2010, at 9:00 a.m., before the Honorable Susan Illston, movant herein will ask this Court for an order certifying this matter as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3), appointing Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust ("Plaintiff" or the "Trust") as class representative and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as class counsel. This motion is supported by the following memorandum of points and authorities, all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether this matter should be certified as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

2.      Whether the Trust should be appointed as class representative.

3.      Whether Robbins Geller should be appointed as class counsel.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Lead Plaintiff Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust brings this motion to certify this securities litigation as a class action on behalf of those persons who purchased PMI Group, Inc. ("PMI" or the "Company") common stock between November 2, 2006 to March 3, 2008 (the "Class Period").[1] In addition, Plaintiff requests that the Court appoint Plaintiff as class representative and its counsel,

---

[1]      Excluded from the Class are Defendants, as defined *infra*, members of the immediate family of the Defendants, the directors, officers, subsidiaries and affiliates of PMI, any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI                                    - 1 -

1 Robbins Geller, as class counsel.[2]  During the Class Period, Plaintiff purchased 54,411 shares of

2 PMI stock and lost more than $760,000.

3          During the Class Period, PMI and the Individual Defendants[3] (collectively, "Defendants")

4 violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") by making

5 false and misleading statements about PMI's business and financial results, which artificially inflated

6 PMI's stock price throughout the Class Period.  By certifying this case as a class action, Plaintiff,

7 and thousands of other investors similarly situated who suffered substantial damages when they

8 purchased PMI stock at artificially inflated prices, will be permitted to efficiently and effectively

9 prosecute this action.

10          In a long and virtually unbroken line of cases, the Ninth Circuit and district courts in

11 California and elsewhere have endorsed the use of class action procedures in adjudicating claims

12 under the federal securities laws:

13          [C]lass actions commonly arise in securities fraud cases as the claims of separate
           investors are often too small to justify individual lawsuits, making class actions the
14         only efficient deterrent against securities fraud.

15 *In re Worlds of Wonder Sec. Litig.*, No. C 87 5491 SC, 1990 U.S. Dist. LEXIS 8511, at *4-*5 (N.D.

16 Cal. Mar. 26, 1990) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir.

17 1964)); *see generally Crossen v. CV Therapeutics*, No. C 03-03709 SI, 2005 U.S. Dist. LEXIS

18 41396 (N.D. Cal. Aug. 10, 2005) (Illston, J.); *In re Connectics Corp., Sec. Litig.*, 257 F.R.D. 572

19 (N.D. Cal. 2009) (Illston, J.).  The "overwhelming weight of authority" holds that securities fraud

20 actions are properly certifiable as class actions.  *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.

21 1975).  Indeed, courts throughout the United States have consistently recognized the necessity for

22 class actions such as this one in order to enforce the federal securities laws.  *See, e.g.*, *Basic Inc. v.*

23 *Levinson*, 485 U.S. 224, 230-31 (1988); *Blackie*, 524 F.2d at 903.  In recognition of their significant

24

25 [2]     By Order dated June 20, 2008, the Court appointed the Trust as Lead Plaintiff pursuant to 15
26 U.S.C. §78u-4(a)(3)(B).

27 [3]     The "Individual Defendants" are L. Stephen Smith, Bradley M. Shuster, David H. Katkov
and Donald P. Lofe, Jr.

28

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI                        - 2 -

1   role in protecting investors, courts liberally construe the requirements of Rule 23 of the Federal

2   Rules of Civil Procedure in favor of class certification. "'[T]he ultimate effectiveness of [the anti-

3   fraud provisions of the securities laws] may depend on the applicability of the class action device.'"

4   *Blackie*, 524 F.2d at 903.[4]

5        This action satisfies all of the requirements of Federal Rule of Civil Procedure 23. The

6   proposed Class is so numerous that joinder of all members is impracticable; there are questions of

7   fact and law common to the Class which predominate; the claims or defenses of the representative

8   party are typical of the claims or defenses of the Class; the representative will fairly and adequately

9   protect the interests of the Class; questions of law or fact common to the members of the Class

10  predominate over any questions affecting only individual members; and a class action is the superior

11  means to resolve the issues raised by this case. Accordingly, this case should be certified as a class

12  action.

13  **II.    FACTUAL SUMMARY**

14       This is a securities class action brought on behalf of all persons who purchased or otherwise

15  acquired PMI common stock between November 2, 2006 and March 3, 2008, inclusive, against PMI

16  and certain of its officers for violations of §§10(b) and 20(a) of the Exchange Act and Rule 10b-5

17  promulgated thereunder. On November 2, 2009, this Court denied Defendants' motion to dismiss

18  the First Amended Complaint for Violation of the Federal Securities Laws (the "Complaint"). The

19  allegations in the Complaint are summarized herein.

20       Founded in 1972, PMI was historically a conservative insurer of full documentation home

21  loans. ¶30.[5] Mortgage insurance was typically purchased by borrowers making less than a 20%

22  down payment on a home. In the event of default, mortgage insurance covered the gap between the

23  amount put down by the borrower and 20% of the home purchase price. *Id*. PMI developed

24  proprietary computer systems to evaluate home loans based on a variety of factors which made

25

---

26  [4]    Here, as elsewhere, citations are omitted and emphasis is added unless otherwise noted.

27  [5]    Paragraph references ("¶_" or "¶¶__") are to the Complaint, unless otherwise noted.

28

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI    - 3 -

1    underwriting essentially formulaic.  ¶32.  In fact, the process was so straightforward that the

2    Company used approved lenders to sell PMI's insurance by simply applying PMI's underwriting

3    guidelines and software.  ¶58.

4           In the booming housing market of the early 2000s, PMI was marginalized as low interest

5    rates and new loan products eliminated the need for mortgage insurance.  ¶¶37-44.  For instance,

6    piggy-back loans replaced mortgage insurance with a second smaller, higher risk loan, which

7    together avoided the mortgage insurance requirement.  *See* ¶44.  Faced with a steadily declining

8    persistency[6] rate, Defendants abandoned their conservative underwriting practices and began

9    insuring riskier loans, including:  more sub-prime loans, loans with loan-to-value ratios exceeding

10   95% or even 97%; loans with exotic payment structures, including interest-only loans, payment

11   option adjustable rate mortgages ("ARMs") and 2/28 hybrid ARMs; and loans with increasingly

12   large principal amounts.  ¶¶45, 59, 61.  Defendants also started insuring loans with reduced

13   documentation, meaning that the borrower's information was either not verified (for instance, by a

14   W-2 Form) or not provided at all.  ¶45.  Further increasing PMI's risk exposure, many loans

15   contained more than one of these risk factors.  *Id.*  In 2003, Defendants also purchased a controlling

16   share of Financial Guaranty Insurance Company, Inc. ("FGIC"), a subsidiary through which it sold

17   financial guarantees on the market's most toxic and complex investment vehicles, including

18   residential mortgage-backed securities.  ¶¶46-54.  Defendants' decision to drastically shift PMI's

19   business practices and abandon its historical underwriting practices significantly increased PMI's

20   risk exposure.  ¶¶3-5, 45, 89, 96.  Ultimately, this caused PMI to incur massive losses from insuring

21   risky loans.  *See, e.g.*, ¶¶115, 125, 131, 147.

22          Having expanded PMI's business into areas beyond PMI's traditional business, Defendants

23   could no longer adequately evaluate risk.  ¶65.  Moreover, as the housing market collapsed and

24   Defendants learned that more and more of PMI's insured loans were procured by fraud and were

25   underperforming, Defendants' ability to generate revenue and the quality of its business became

26

27   _____

     [6]     "Persistency" refers to the degree to which existing insurance policies remain in force and
     generate premiums.  ¶31.

28

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI          - 4 -

diminished.  ¶¶55-59.  Defendants were desperate to find ways to convince the market that PMI's business was sound.  *See, e.g.*, ¶¶67-68.  There was simply no way to do so legitimately given the risks and the reality of the mortgage and housing markets and Defendants' knowledge about the performance of PMI's portfolio.  ¶¶69-82.  Toward the end of 2006, the situation was critical and Defendants, in an effort to attempt to ride out the crisis, engaged in a scheme to defraud investors regarding PMI's revenues and income as well as the health of the business.

Plaintiff alleges that Defendants knowingly or recklessly made material false and misleading statements throughout the Class Period.  For example, Defendants falsely assured the market that their core strength was credit risk management, despite the fact that PMI's systems could no longer adequately evaluate the exotic loan products and reduced documentation loans it was insuring. ¶¶66-68.  Causing the market to believe that Defendants were successfully managing PMI's risk portfolio was essential to convincing investors that PMI was able to create true value for investors. *Id.*  In virtually every conference call throughout the Class Period, Defendants sought to convince the market that they were effectively managing risk: "We watch [Alt-A] like a hawk. . . .  We're professional risk managers.  It's what we do day [in] and day out."  *See, e.g.*, ¶¶67-68.  Moreover, Defendants assured the market that they had not changed their risk tolerances despite ample internal evidence to the contrary.  ¶¶70-71, 77-80, 83-88, 97.  Defendants falsely assured investors that they were adequately managing risk and avoiding risk layering,[7] "We are keenly aware of [risk layering] in our own risk management and portfolio."  ¶113.  In fact, risk layering in Defendants' portfolio was growing and presented a substantial credit risk.  ¶89.  Defendants manipulated loss reserves and loss adjustment expenses ("LAEs") by deliberately underestimating PMI's loan portfolio delinquencies and using improper economic assumptions to present a misleadingly positive projection of PMI's risk exposure.  ¶¶205-230.  Defendants also failed to timely write down their investment in FGIC which should have been written off entirely by 3Q07 based on Generally

---

[7]    "Risk layering" refers to loans which had more than one factor indicative of increased risk, including, for instance, low FICO score, large principal amount and interest-only payment structure. *See* ¶89.

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI          - 5 -

1  Accepted Accounting Principles and Securities and Exchange Commission ("SEC") guidance.

2  ¶¶167-204. These false statements appear in press releases, investor conference call transcripts and

3  SEC filings and caused PMI's stock to trade at inflated values throughout the Class Period.[8]

4       The truth regarding PMI's business operations, finances, metrics and future prospects were

5  revealed through a series of partial disclosures, often coupled with new (or an affirmation of prior)

6  false statements. *See* ¶¶231-235. Beginning on July 31, 2007, Defendants announced 2Q07

7  earnings of $0.95 per share but revealed increased quarterly losses and increased full year guidance

8  for losses, which Defendants attributed to "deteriorating market conditions." ¶¶115, 117.

9  Nonetheless, Defendants remained bullish – "we're seeing significant and positive long term trends

10 that will bode well for our business." ¶117. On this news, the stock declined 8.6% in heavy trading.

11 ¶119. On October 18, 2007, Defendants pre-announced a 3Q07 loss of $1.05 per share and

12 withdrew previously-announced full year guidance, causing the stock price to fall 12.9% on heavy

13 trading. ¶¶125-126. On October 30, 2007, the Company announced 3Q07 losses of $1.04 per share,

14 which it attributed to continued deterioration of the housing and mortgage market, but failed to write

15 down its investment in FGIC and made further false and misleading statements. ¶¶131-134. Finally

16 on March 3, 2008, the Company announced a net loss of $236M in 4Q07 and delay in the filing of

17 its year-end 2007 SEC Form 10-K due to a delay in FGIC reporting its financials. ¶¶147-149. On

18 March 17, 2008, PMI announced a net loss of over $915.3M as of December 31, 2007 – a decline of

19 318% from PMI's reported income of $419M a year earlier. ¶¶155-156. The Company also

20 estimated that 2007 losses and LAE would approximate $1.1B. Finally, PMI wrote down its

21 investment in FGIC from $884M at the close of 3Q07 to $103.6M. *Id.*

22

23

24

25

---

26 [8]    Plaintiff alleges that Defendants made false and misleading statements of material fact on the
27 following dates: 11/2/06, 2/5/07, 2/12/07, 2/14/07, 3/15/07, 4/30/07, 6/26/07, 7/31/07, 8/20/07,
9/10/07, and 10/30/07.

28

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI    - 6 -

### III.    ARGUMENT

#### A.    This Case Appropriately Calls for Class Action Treatment Under Rule 23

Plaintiff's Complaint details a scheme that defrauded thousands of similarly situated individuals. The Ninth Circuit and district courts within it have repeatedly endorsed the use of class action procedures to resolve claims under the federal securities laws.[9] As one court has stated, "[t]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *Schneider v. Traweek*, No. CV 88-0905 RG (Kx), 1990 U.S. Dist. LEXIS 15596, at *16 (C.D. Cal. Aug. 7, 1990) (citing *Blackie*, 524 F.2d at 902). Indeed, "the Ninth Circuit has stated a preference for resolving securities fraud claims via class action as a means of deterring fraud." *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 615 (S.D. Cal. 2007). Courts recognize that any doubt as to the propriety of certification should be resolved in favor of certifying the class because denying class certification will almost certainly terminate the action and be detrimental to the members of the class. *Blackie*, 524 F.2d at 901. "[C]lass actions commonly arise in securities fraud cases as the claims of separate investors are often too small to justify individual lawsuits, making class actions the only efficient deterrent against securities fraud. Accordingly, the Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991).[10]

---

[9]    The passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA") has not changed the standard for certifying a class action. *See In re THQ, Inc. Sec. Litig.*, No. CV 00-1783 AHM (Ex), 2002 U.S. Dist. LEXIS 7753, at *8-*9 (C.D. Cal. Mar. 22, 2002) ("[L]ower courts have recognized that '*the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws*.'"); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("[I]n an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward.").

[10]    *See also Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996); *Yamner v. Boich*, No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *6 (N.D. Cal. Sept. 15, 1994) ("The Ninth Circuit favors a liberal use of class actions to enforce federal securities laws."); *In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1350 (N.D. Cal. 1994) (finding that doubts should be resolved in favor of class certification).

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI          - 7 -

1    The Supreme Court has long recognized, and Congress has affirmed, that private actions are

2 also an important enforcement mechanism to supplement governmental administrative regulation of

3 the securities markets. "Private enforcement . . . provides a necessary supplement to [SEC] action,"

4 by both affording relief to those injured by violations of the securities laws and serving as a deterrent

5 to future wrongdoing. *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964); *see also Basic*, 485 U.S. at

6 231 (private actions for violations of the Exchange Act "constitute[] an essential tool for

7 enforcement of the [Exchange] Act's requirements").

8    In enacting the PSLRA, Congress reaffirmed the importance of private enforcement of the

9 securities laws:

10        Private securities litigation is an indispensable tool with which defrauded investors
          can recover their losses without having to rely upon government action. Such private
11        lawsuits promote public and global confidence in our capital markets and help to
          deter wrongdoing and to guarantee that corporate officers, auditors, directors,
12        lawyers and others properly perform their jobs.

13 H.R. Conf. Rep. No. 104-369, at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 730.  Thus, this

14 Court should liberally construe the requirements of Rule 23 in favor of certifying this securities fraud

15 case as a class action.

16    Nothing in the Ninth Circuit's recent en banc decision in *Dukes v. Wal-Mart Stores, Inc.*, No.

17 04-16688, 2010 U.S. App. LEXIS 8576 (9th Cir. Apr. 26, 2010), alters Plaintiff's burden under Rule

18 23 or this Court's analysis of the present motion. *Id*. at *43 ("In short, the explanation we provide

19 today is not a new standard at all.").  In *Dukes*, a case brought under Title VII of the Civil Rights Act

20 of 1964, the Ninth Circuit surveys the judicial landscape with regard to what extent, if any, a court

21 may evaluate the underlying merits of a case at the class certification stage.  *Id*. at *3, *13-*44.

22 *Dukes* holds that "[a] district court must sometimes resolve factual issues related to the merits to

23 properly satisfy itself that Rule 23's requirements are met, but the purpose of the district court's

24 inquiry at this stage remains focused on, for example, common *questions* of law or fact under Rule

25 23(a)(2), or predominance under Rule 23(b)(3), ***not the proof of answers to those questions or the***

26 ***likelihood of success on the merits.***"  *Id*. at *43-*44 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457

27 U.S. 147, 158 (1982)); *see also id*. at *28 ("this does not mean a district court should put the actual

28

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI          - 8 -

1   resolution of the merits cart before the motion to dismiss, summary judgment, and trial horses by

2   reaching out to decide issues unnecessary to the Rule 23 requirements").

3          *Dukes* also touches upon the application of the Rule 23 standard to securities cases. *Id.* at

4   *46-*51. In a fraud-on-the-market case, where a plaintiff must establish the six elements set forth in

5   *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005), the court states that only "the efficient

6   market component of the causation element overlaps with the merits." *Dukes*, 2010 U.S. App.

7   LEXIS 8576, at *47. Thus, the clear indication is that an analysis of any of the other merits

8   underlying Plaintiff's securities fraud claim – including falsity, scienter and loss causation – is

9   improper at the class certification stage.

10         **B.      The Proposed Class Satisfies the Prerequisites of Rule 23(a)**

11         A review of the requirements of Federal Rule of Civil Procedure 23 and the relevant case law

12   demonstrates that this lawsuit should be certified as a class action. Rule 23(a) enumerates the

13   prerequisites of a class action:

14         One or more members of a class may sue or be sued as representative parties on
           behalf of all only if:
15

16                (1)      the class is so numerous that joinder of all members is impracticable;

17                (2)      there are questions of law or fact common to the class;

18                (3)      the claims or defenses of the representative parties are typical of the
           claims or defenses of the class; and

19                (4)      the representative parties will fairly and adequately protect the
           interests of the class.
20

21   Fed. R. Civ. P. 23(a). Thus, this case may proceed as a class action once Plaintiff establishes that the

22   securities fraud claims satisfy the four prerequisites of Rule 23(a): numerosity, commonality,

23   typicality and adequacy of representation. *See Hernandez v. Alexander*, 152 F.R.D. 192, 193 (D.

24   Nev. 1993); *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D.

25   251, 253 (C.D. Cal. 1988); *Connectics*, 257 F.R.D. at 575; *Crossen*, 2005 U.S. Dist. LEXIS 41396,

26   at *7. The proposed Class in this case easily satisfies each of these prerequisites.

27

28

1.      **The Class Is so Numerous that Joinder of All Members of the Class Is Impracticable**

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable."  Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class.  *Harris*, 329 F.2d at 913-14; *see also Wehner v. Syntex Corp.*, 117 F.R.D. 641, 643 (N.D. Cal. 1987).  There is no fixed number of class members which precludes the certification of a class.  *Arnold v. United Artists Theatre Circuit*, 158 F.R.D. 439, 448 (N.D. Cal. 1994).  Indeed, classes consisting of 25 members have been held large enough to justify certification.  *See In re Cirrus Logic Sec.*, 155 F.R.D. 654, 656 (N.D. Cal. 1994); *Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984).  Courts have certified classes whose membership sizes range from less than 100 to over 100,000.  *In re Verisign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438, at *12 (N.D. Cal. Jan. 13, 2005).  Additionally, the exact size of the class need not be known so long as general knowledge and common sense indicate that the class is large.  *Id.*; *see also Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification and plaintiff's allegations plainly suffice to meet the numerosity requirement of Rule 23.").  Indeed, courts have assumed that the numerosity requirement is satisfied in securities cases involving nationally-traded stocks.  *Yamner*, 1994 U.S. Dist. LEXIS 20849, at *7-*8.

In securities litigation, district courts regularly find the numerosity requirement satisfied with respect to a purported class of purchasers or resellers of nationally traded securities on the basis of the number of shares sold during the class period.  *See In re Emulex Corp.*, 210 F.R.D. 717, 719 (C.D. Cal. 2002) ("[T]he Class would include hundreds or thousands of purchasers since approximately five million shares of Emulex stock were traded daily during the Class Period. Individual joinder of members of a class this size would be impracticable."); *Worlds of Wonder*, 1990 U.S. Dist. LEXIS 8511, at *8 (holding that class of 71 debenture holders was sufficiently numerous); *Greenspan v. Brassler*, 78 F.R.D. 130, 132 n.4 (S.D.N.Y. 1978) (964,000 shares traded during class period); *Trattner v. Am. Fletcher Mortgage Investors*, 74 F.R.D. 352, 356 (S.D. Ind.

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI          - 10 -

1   1976) (mere fact that stock volume was sufficient to be traded on New York Stock Exchange);

2   *Brady v. Lac, Inc.*, 72 F.R.D. 22, 27 (S.D.N.Y. 1976) (1.3 million outstanding shares); *In re Penn*

3   *Cent. Sec. Litig.*, 62 F.R.D. 181, 188 (E.D. Pa. 1974) (1.5 million outstanding shares); *Jacobs v. Paul*

4   *Hardeman, Inc.*, 42 F.R.D. 595, 598 (S.D.N.Y. 1967) (7,000 outstanding indentures); *Verisign*, 2005

5   U.S. Dist. LEXIS 10438, at *12-*13.

6           While Plaintiff has not yet obtained PMI's stock transfer records for the time period in

7   question, PMI had approximately 81 million shares of common stock outstanding during the Class

8   Period, such that there were undoubtedly thousands, if not tens of thousands, of purchasers of PMI

9   shares on the New York Stock Exchange during the 17-month Class Period.  ¶13.  In order to meet

10  the numerosity requirement for class certification, Plaintiff may rely on reasonable inferences drawn

11  from available facts in order to demonstrate that the Class is so numerous that joinder of all class

12  members is impracticable.  *Blech*, 187 F.R.D. at 103.[11]  With 81 million shares of PMI common

13  stock outstanding, it is clear that a class of this size is so numerous as to make individual joinder

14  impracticable, if not logistically impossible, especially where members of the Class are located

15  throughout the country.  Plainly, the proposed Class satisfies the numerosity requirement of Rule

16  23(a).  *See Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 398 (D. Or. 1996); *Wehner*, 117

17  F.R.D. at 643; *In re Seagate Techs. Sec. Litig.*, 115 F.R.D. 264, 267 (N.D. Cal. 1987); *Weinberger v.*

18  *Jackson*, 102 F.R.D. 839, 844 (N.D. Cal. 1984).

19          **2.      Questions of Law and Fact Are Common to Members of the
                       Class**

20          The proposed Class also satisfies the "commonality" requirement of Rule 23(a)(2).  The

21  Complaint describes a "common course of conduct" which is the hallmark of securities fraud actions

22  brought and certified as class actions under Rule 23.  As the Ninth Circuit stated in *Blackie*:

23          The overwhelming weight of authority holds that repeated misrepresentations of the
            sort alleged here satisfy the "common question" requirement.  Confronted with a

24

25  _____

26  [11]    *Accord Sherman v. Griepentrog*, 775 F. Supp. 1383, 1389 (D. Nev. 1991) ("'It is not
    necessary that the members of the class be so clearly identified that any member can be presently
27  ascertained.'  The court may draw a reasonable inference of the size of the class from the facts
    before it.") (quoting *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970)).

28

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI          - 11 -

class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

524 F.2d at 902.[12]   Not all questions of fact and law need be common to satisfy Rule 23(a)(2). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Dukes*, 2010 U.S. App. LEXIS 8576, at *72-*73.  "Rather, 'the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.'"  *THQ*, 2002 U.S. Dist. LEXIS 7753, at *11 (quoting *Hanlon*, 150 F.3d at 1019).  In fact, several courts have found that a single issue common to the proposed class satisfies Rule 23(a)(2). *See, e.g.*, *THQ*, 2002 U.S. Dist. LEXIS 7753, at *11; *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996); *see also In re Am. Med. Sys.*, 75 F.3d 1069, 1080 (6th Cir. 1996).  The commonality requirement "has been construed permissively."  *Hanlon*, 150 F.3d at 1019; *Dukes*, 2010 U.S. App. LEXIS 8576, at *72.

Here, the nature and existence of material omissions and misrepresentations detailed in the Complaint – the most crucial issues in a securities fraud case – present questions of fact and law common to all members of the Class.  Defendants' false representations appeared in a number of statements, transcripts, reports and documents disseminated to the investing public.  As a result, class certification is appropriate because the claims against Defendants "arise out of the same set of operative facts and are based on common legal theories." *Schneider*, 1990 U.S. Dist. LEXIS 15596, at *18.[13]

---

[12]    In *Blackie*, the class was composed of purchasers of Ampex Corporation stock over a two-year period.  Plaintiffs alleged that they purchased at an artificially inflated price due to defendants' misrepresentations of Ampex Corporation's financial status.  The Ninth Circuit reasoned that although the alleged misrepresentations were contained in 45 different documents issued over a two-year period and each purchaser relied on "a different set of accounting facts," defendants consistently misrepresented the adequacy of reserves, thereby creating a source of price inflation common to each purchaser. *Blackie*, 524 F.2d at 904-05.  The court found that plaintiffs alleged a common course of conduct by defendants that presented common questions of law and fact.  *Id.* at 902-04.

[13]    *Accord In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 801 (S.D. Cal. 1990) ("[T]he existence, nature, and significance of material omissions and misrepresentations are issues common

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI                          - 12 -

1    Common questions of fact and law are clear from Plaintiff's allegations, including: (i)

2  whether Defendants violated the Exchange Act; (ii) whether Defendants falsely represented or

3  omitted material facts; (iii) whether the Individual Defendants caused PMI to issue false and

4  misleading statements during the Class Period; (iv) whether Defendants knew or recklessly

5  disregarded that their statements were false and misleading; (v) whether the price of PMI's publicly-

6  traded securities was artificially inflated; and (vi) the extent of damage sustained by class members

7  and the appropriate measure of damages.  *See, e.g.*, ¶244.

8    Securities fraud complaints alleging such common questions have consistently been held to

9  be prime candidates for class certification.  *See, e.g.*, *Blackie*, 524 F.2d at 902-05; *Schaefer v.*

10  *Overland Express Family of Funds*, 169 F.R.D. 124, 128 (S.D. Cal. 1996); *Cirrus Logic*, 155 F.R.D.

11  at 657; *Schneider*, 1990 U.S. Dist. LEXIS 15596, at *18-*21.  "Class securities fraud cases

12  involving a class of purchasers allegedly defrauded over a period of time by similar

13  misrepresentations satisfy the common questions requirement."  *In re Alco Int'l Group, Sec. Litig.*,

14  158 F.R.D. 152, 154 (S.D. Cal. 1994).  Plaintiff alleges that Defendants' public statements, press

15  releases and announcements falsely represented PMI's financial performance, thereby deceiving

16  each purchaser as to the Company's true business condition and the value of PMI's common stock

17  throughout the Class Period.  These issues present quintessential examples of "common questions"

18  of law and fact requiring class certification.

19    Members of the Class will have varying damages because they purchased and sold the

20  securities at different times.  However, this Court and other courts have noted that this does not

21  defeat commonality.  *See Connetics*, 257 F.R.D. at 578; *Verisign*, 2005 U.S. Dist. LEXIS 10438, at

22  *17 ("commonality 'is easily met in cases where class members all bought or sold the same stock in

23

24  to all class members."); *United Energy*, 122 F.R.D. at 254; *Schwartz*, 108 F.R.D. at 282; *In re Unioil*
    *Sec. Litig.*, 107 F.R.D. 615, 618-19 (C.D. Cal. 1985); *In re Jackpot Enters. Sec. Litig.*, No. CV-S-89-
25  805-LDG(RJJ), 1991 U.S. Dist. LEXIS 16353, at *24-*25 (D. Nev. Mar. 28, 1991) ("The main issue
    in dispute here will be whether the defendants engaged in a pattern of activities and omissions which
26  violated their duties under the relevant statutes to honestly disclose all material information
    concerning the securities in question.  This issue is common to all of the named plaintiffs, and will
27  be necessarily decided in satisfying the claims of all potential plaintiffs within the proposed class.").

28

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI          - 13 -

1   reliance on the same disclosures made by the same parties, even when damages vary'"); *see also In*

2   *re Micron Techs., Inc.*, 247 F.R.D. 627, 632 (D. Idaho 2007) (commonality is satisfied where

3   plaintiffs allege a single fraudulent scheme that affected each member of the class); *In re Cooper*

4   *Cos. Sec. Litig.*, No. SACV 06-00169-CJC(RNBx), 2009 U.S. Dist. LEXIS 3244, at *16 (C.D. Cal.

5   Jan. 6, 2009) (same).   Thus, this action satisfies the commonality requirement of Fed. R. Civ. P.

6   23(a)(2).

7               **3.       Plaintiff's Claims Are Typical of Those of the Class**

8               Plaintiff's claims satisfy the typicality requirement of Rule 23(a)(3) if they arise from the

9   same event or course of conduct that gives rise to claims of other class members and the claims

10  asserted are based on the same legal theory.

11              Plaintiffs have sufficiently demonstrated that the named class representatives' claims
             are typical of those of the entire "global" class because the "typicality" prerequisite
12           of Rule 23(a)(3) is satisfied when all members of the class are victims of the same
             course of conduct.

13  *Schneider*, 1990 U.S. Dist. LEXIS 15596, at *21; *see also Alco*, 158 F.R.D. at 154 (finding typicality

14  where "claims arise from the same misrepresentations and omissions").   In *Hanlon*, the Ninth Circuit

15  explained that "[u]nder [Rule 23's] permissive standards, representative claims are 'typical' if they

16  are reasonably co-extensive with those of absent class members; they need not be substantially

17  identical."   150 F.3d at 1020; *Dukes*, 2010 U.S. App. LEXIS 8576, at *115-*116.

18              The purpose of the "typicality" requirement is to ensure that the named representative's

19  interests "align" with those of the class.   *Connectics*, 257 F.R.D. at 576; *Hanon v. Dataproducts*

20  *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).   "The test for typicality is (1) whether other members have

21  the same or similar injury as the representative; (2) whether the action is based on conduct not

22  unique to the representative; and (3) whether other class members have been injured by the same

23  course of conduct."   *In re DJ Orthopedics, Inc.*, No. 01-CV-2238-K (RBB), 2003 U.S. Dist. LEXIS

24  21534, at *14 (S.D. Cal. Nov. 17, 2003) (citing *Hanon*, 976 F.2d at 508); *see A & J Deutscher*

25  *Family Fund v. Bullard*, No. CV 85-1850-PAR, 1986 U.S. Dist. LEXIS 20054, at *18 (C.D. Cal.

26  Sept. 22, 1986); *Cirrus Logic*, 155 F.R.D. at 657; *In re Infineon Techs. AG Sec. Litig.*, No. C 04-

27  04156 JW, 2009 U.S. Dist. LEXIS 103385, at *22 (N.D. Cal. Mar. 6, 2009).

28

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI                        - 14 -

1    Typicality does ***not*** require the representative's claims to be identical – or even "substantially

2    identical" – to the class members' claims:

3          "***Typicality refers to the nature of the claim or defense of the class***
          ***representative, and not to the specific facts from which it arose or the relief sought.***
4          ***Accordingly, differences in the amount of damage, the size or manner of [stock]***
          ***purchase, the nature of the purchaser, and even the specific document influencing***
5          ***the purchase will not render a claim atypical in most securities cases***."

6    *Weinberger*, 102 F.R.D. at 844 (quoting 5 Herbert B. Newberg & Alba Conte, *Newberg on Class*

7    *Actions* §8816, at 850 (1977)); *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) ("We

8    do not insist that the named plaintiffs' injuries be identical with those of the other class members,

9    only that the unnamed class members have injuries similar to those of the named plaintiffs and that

10   the injuries result from the same, injurious course of conduct."); *Schlagal v. Learning Tree Int'l*, No.

11   CV 98-6384 ABC (Ex), 1999 U.S. Dist. LEXIS 2157, at *12 (C.D. Cal. Feb. 23, 1999) ("Differences

12   in damage awards are inherent to almost any class action and, consequently cannot overcome a class

13   certification motion."); *Yamner*, 1994 U.S. Dist. LEXIS 20849 (finding typicality in spite of

14   plaintiff's purchase of stock after learning of fraudulent conduct).

15        This case satisfies the typicality requirement of Rule 23(a)(3) since the claims of all class

16   members derive from the same legal theories and allege the same set of operative facts.  Plaintiff,

17   like the other class members, purchased PMI's common stock and thereby suffered damages as a

18   consequence of Defendants' false and misleading oral and written statements.  Plaintiff purchased

19   24,100 PMI shares between March 21, 2007 and May 1, 2007.  *See* Declaration of Malcolm J. Auble

20   in Support of Plaintiff's Motion for Class Certification ("Auble Decl."), Ex. A, filed herewith.

21   Plaintiff sold these shares on October 30 and 31, 2007. [14]  *Id.*  Plaintiff purchased 30,311 additional

22   shares on February 26, 2008, which it held through the end of the Class Period. [15]  All members of

23   _____

24   [14]    Plaintiff's sale prior to the end of the Class Period does not render it atypical nor does it
     make Lead Plaintiff's interests adverse to those of the putative class. *Connectics*, 257 F.R.D. at 577-
25   78 (finding lead plaintiff typical despite sale of all shares prior to full disclosure; holding timing of
     lead plaintiff's stock sales relates to damages and does not create intra-class conflict nor warrant
26   denial of certification).

27   [15]    This Court has rejected the argument "that in general, a plaintiff is atypical if it buys stock
28   after the disclosure of an alleged fraud. . . .  [N]umerous cases . . . have held that the proposed class

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI                    - 15 -

1    the Class were victims of a common course of fraudulent conduct by Defendants throughout the

2    Class Period and sustained damages as a result.  Because Plaintiff's claims arise from the same

3    misrepresentations and omissions, Plaintiff's claims are typical of those of the Class.

                    **4.**        **Plaintiff Will Fairly and Adequately Protect the Interests of**

4                                    **the Class Members**

5            Rule 23(a)(4) permits the certification of a class action when "the representative parties will

6    fairly and adequately protect the interests of the class."  Courts have established a two-prong test for

7    this requirement.  *See, e.g., Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.

8    1978); *Schaefer*, 169 F.R.D. at 130; *United Energy*, 122 F.R.D. at 257.  First, counsel for the class

9    representatives must be competent to undertake the particular litigation at hand.  Second, there can

10   be no antagonism or disabling conflict between the interests of the named class representatives and

11   the members of the class.  A classic formulation of these elements was set forth in *Eisen v. Carlisle*

12   *& Jacquelin*, 391 F.2d 555 (2d Cir. 1968):

13                 What are the ingredients that enable one to be termed "an adequate

14          representative of the class?"  To be sure, an essential concomitant of adequate
            representation is that the party's attorney be qualified, experienced and generally able

15          to conduct the proposed litigation.  Additionally, it is necessary to eliminate so far as
            possible the likelihood that the litigants are involved in a collusive suit or that

16          plaintiff has interests antagonistic to those of the remainder of the class.

17   *Id.* at 562.  "The burden is on the defendants to prove that the representation will be inadequate."

18   *Epitope, Inc., Sec. Litig.*, No. 92-759-RE, 1992 U.S. Dist. LEXIS 22705, at *10 (D. Or. Nov. 30,

19   1992).

20           Both prongs of the "adequacy" test have been met in this case.  First, there can be no

21   legitimate dispute that Plaintiff's counsel is capable of prosecuting this litigation.  Plaintiff's counsel

22   possesses extensive experience in the area of securities litigation and has successfully prosecuted

23   numerous securities fraud class actions and other complex actions on behalf of injured investors in

24

25

26   _____

27   representative's purchases of stock after adverse disclosures do not destroy typicality."  *Connetics*,
     257 F.R.D. at 576.

28

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI                    - 16 -

1    this District and across the country.[16]  Moreover, there should be no question this firm has the

2    necessary resources to rigorously represent the proposed class.  The adequacy of Plaintiff's counsel

3    is beyond reproach.[17]

4           The second requirement is also satisfied here because there is no antagonism between the

5    representative plaintiff and the absent class members.  *See Lubin v. Sybedon Corp.*, 688 F. Supp.

6    1425, 1461 (S.D. Cal. 1988); *Weinberger*, 102 F.R.D. at 844-45.  The proposed class representative,

7    the Trust, manages the retirement and associated death benefits for its participants and their

8    beneficiaries.  Auble Decl., ¶2.  The Trust's assets as of March 31, 2010, were in excess of $2

9    billion.  *Id*.  The Trust purchased a total of 54,411 shares of PMI stock between March 21, 2007 and

10   February 26, 2008.  Auble Decl., Ex. A.  The Trust is a large, sophisticated institutional investor who

11   is committed to vigorously prosecuting this litigation and will endeavor to obtain the largest

12   recovery for the Class consistent with good faith and sound judgment.  *Id.* ¶6.  The Trust's Chairman

13   of the Board, Michael J. Auble, has supervised and monitored the progress of this litigation and

14   actively participated in its prosecution.  *Id.* ¶5.  For example, Mr. Auble has reviewed various

15   pleadings submitted in the case, received and reviewed quarterly updates and other correspondence

16   from Lead Counsel, participated in discussions with Lead Counsel regarding significant

17   developments in the litigation and consulted with Lead Counsel regarding all settlement efforts.  *Id.*

18          The Trust is committed to continuing to actively direct this litigation and maximize the

19   recovery for the Class by attending hearings, depositions and/or trial as well as overseeing the

20   preparation and filing of pleadings, as appropriate.  *Id*. ¶¶6-7.  Further, the Trust understands that it

21   owes a fiduciary duty to all members of the proposed Class to provide fair and adequate

22   representation and intends to continue to work with Lead Counsel to obtain the largest recovery for

23

24   _____

25   [16]    *See* firm résumé of Robbins Geller Rudman & Dowd LLP, attached to the Declaration of
26   Daniel S. Drosman in Support of Plaintiff's Motion for Class Certification as Ex. 1, filed herewith.

27   [17]    For this reason, Robbins Geller should be appointed as class counsel pursuant to Fed. R. Civ.
     P. 23(g).

28

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI          - 17 -

the whole class consistent with good faith and meritorious advocacy. *Id.* ¶8. Accordingly, Plaintiff "will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4).

### C.    The Proposed Class Satisfies Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), the present action also satisfies the requirements of Rule 23(b), which requires that the proposed class representatives establish that common questions of law or fact predominate over individual questions and that a class action is superior to other available methods of adjudication. *See Hernandez*, 152 F.R.D. at 193-94. As shown above, common questions of law and fact predominate in this case and a class action is the superior, if not the only, method available to fairly and efficiently litigate this securities action. *See Epstein*, 50 F.3d at 668-69; *Schaefer*, 169 F.R.D. at 130-31.

### 1.    Common Questions of Law and Fact Predominate over Individual Questions

Where a complaint alleges a "common course of conduct" of misrepresentations, omissions and other wrongdoings that affect all members of the class in the same manner, common questions predominate. *Blackie*, 524 F.2d at 905-08; *Alco*, 158 F.R.D. at 154. In assessing whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of liability. *See Blackie*, 524 F.2d at 902; *In re Memorex Sec. Cases*, 61 F.R.D. 88, 103 (N.D. Cal. 1973). Indeed, "'when determining whether common questions predominate courts "focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions."'" *In re Indep. Energy Holdings PLC, Sec. Litig.*, 210 F.R.D. 476, 486 (S.D.N.Y. 2002) (citing *Genden v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987) (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981))).

As discussed above, there are a host of common questions of law and fact as to the Class which Plaintiff seeks to certify. These questions clearly predominate over individual questions because Defendants' alleged conduct affected all class members in the same manner and, through false statements, artificially inflated the price of PMI common stock. It is difficult to discern liability issues in this case that are not common to all members of the Class. *See, e.g., Freedman*,

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI          - 18 -

1   922 F. Supp. at 399-400; *Schaefer*, 169 F.R.D. at 130-31; *United Energy*, 122 F.R.D. at 256;

2   *Emulex*, 210 F.R.D. at 721 (granting motion for class certification where "[t]he predominant

3   questions of law or fact at issue in this case are the alleged misrepresentation Defendants made

4   during the Class Period and are common to the class"); *Unioil*, 107 F.R.D. at 622 ("As plaintiffs'

5   claim is based on a common nucleus of misrepresentations, material omissions and market

6   manipulations, the common questions predominate over any differences between individual class

7   members with respect to damages, causation or reliance."). The critical issues of fact and law raised

8   in this action are common to all members of the Class and they will predominate in this case. Once

9   these common questions are resolved, all that will remain is the purely mechanical act of computing

10  the amount of damages suffered by each class member.

11         In addition, in this case, there are no individual issues related to the element of reliance

12  because reliance by all members of the class may be presumed under the fraud-on-the-market

13  doctrine. *Basic*, 485 U.S. at 243. The fraud-on-the-market presumption is "'based on the hypothesis

14  that, in an open and developed securities market, the price of a company's stock is determined by the

15  available material information regarding the company and its business . . . . Misleading statements

16  will therefore defraud purchasers of stock even if the purchasers do not directly rely on the

17  misstatements . . . .'" *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) (quoting *Basic*, 485

18  U.S. at 241-42). That investors presumably relied on the integrity of the market when making their

19  transactions is clear. Indeed, "it is hard to imagine that there ever is a buyer or seller who does not

20  rely on market integrity. Who would knowingly roll the dice in a crooked crap game?" *Schlanger v.*

21  *Four-Phase Sys., Inc.*, 555 F. Supp. 535, 538 (S.D.N.Y. 1982); *Basic*, 485 U.S. at 246-47.

22         While "[a] motion for class certification is an inappropriate forum" for a factual

23  determination regarding the efficiency or inefficiency of the market during the Class Period, it

24  nonetheless cannot be disputed that PMI traded on an efficient market. *In re Applied Micro Circuits*

25  *Corp. Sec. Litig.*, No. 01CV0649 K (AJB), 2003 U.S. Dist. LEXIS 14492, at *11-*12 (S.D. Cal.

26  July 15, 2003). "'[T]he presumption of reliance is available only when a plaintiff alleges that a

27  defendant made material representations or omissions concerning a security that is actively traded in

28

1    an "efficient market," thereby establishing a "fraud on the market.""" *In re LDK Solar Sec. Litig.*,

2    255 F.R.D. 519, 526 (N.D. Cal. 2009).

3         In *Binder*, the Ninth Circuit adopted the five-factor test for efficiency set forth in *Cammer v.*

4    *Bloom*, 711 F. Supp. 1264, 1286 (D.N.J. 1989), as follows:

5         [F]irst, whether the stock trades at a high weekly volume; second, whether securities
     analysts follow and report on the stock; third, whether the stock has market makers

6         and arbitrageurs; fourth, whether the company is eligible to file SEC registration
     form S-3, as opposed to form S-1 or S-2; and fifth, whether there are "empirical facts

7         showing a cause and effect relationship between unexpected corporate events or
     financial releases and an immediate response in the stock price."

8    *Binder*, 184 F.3d at 1065.

9         As alleged in ¶13 of the Complaint and as set forth in the Declaration of Bjorn I. Steinholt,

10   CFA ("Steinholt Decl."), PMI stock traded in an efficient market throughout the Class Period.  Mr.

11   Steinholt is a noted expert in the field of market efficiency.  *See* Steinholt Decl., Ex. A; *In re*

12   *HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 281 (N.D. Ala. 2009).  While not required at the

13   class certification stage, in a detailed declaration submitted herewith, Mr. Steinholt concludes that

14   the market for PMI securities, including options, was efficient during the Class Period.  *See* Steinholt

15   Decl., ¶24.

16        The Company's stock traded on the New York Stock Exchange ("NYSE"), which is

17   considered one of the most efficient markets.  *Id*. ¶11; *Cammer*, 711 F. Supp. at 1292-93

18   (presumption of efficiency applies to NYSE).  PMI had an average daily trading volume of 2.22

19   million shares and a weekly turnover of 13%.  Steinholt Decl., ¶¶14-15; *Cammer*, 711 F. Supp. at

20   1286 ("Turnover measured by average weekly trading of two percent or more of the outstanding

21   shares would justify a strong presumption that the market for the security is an efficient one; one

22   percent would justify a substantial presumption[.]"); *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F.

23   Supp. 2d 955, 965 n.6 (C.D. Cal. 2000) (average weekly trading volume of 272,989 shares during

24   class period, or "one percent of outstanding shares," satisfied the "first factor in the *Cammer*

25   analysis").

26        Significant analyst coverage supports a finding of market efficiency because it shows that the

27   company is closely reviewed by investment professionals, who in turn make buy/sell

28

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI       - 20 -

1    recommendations to investors.  *Cammer*, 711 F. Supp. at 1286.  In fact, PMI was covered by at least

2    16 analysts who published more than 50 analyst reports during the Class Period.  Steinholt Decl.,

3    ¶16.  This is easily sufficient.  *See Levine v. SkyMall, Inc.*, No. CIV 99-166-PHX-ROS, 2001 U.S.

4    Dist. LEXIS 24705, at *14-*19 (D. Ariz. May 24, 2001) (court found eight analysts sufficient); *In re*

5    *NetBank, Inc.*, 259 F.R.D. 656, 670-71 (N.D. Ga. 2009) (coverage by 14 analysts who published 114

6    analyst reports during the class period satisfied *Cammer* requirement); *In re Turbodyne Techs., Inc.*

7    *Sec. Litig.*, No. CV 99-00697 MMM (BQRx), 2002 U.S. Dist. LEXIS 25738, at *50-*51 (C.D. Cal.

8    Mar. 15, 2002) (coverage by three analysts during the class period satisfied *Cammer* analyst factor).

9    *See also Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 499 (S.D. Fla. 2003) (coverage by two

10   analysts and news media sufficient); *Blatt v. Muse Techs., Inc.*, No. 01-11010-DPW, 2002 U.S. Dist.

11   LEXIS 18466, at *47 (D. Mass. Aug. 27, 2002) (coverage by one analyst who was not even

12   independent held to be sufficient); *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 431 (S.D. Fla. 1991)

13   (six analysts sufficient); *In re Res. Am. Sec. Litig.*, 202 F.R.D. 177, 189 (E.D. Pa. 2001) (five

14   sufficient); *Tatz v. Nanophase Techs. Corp.*, No. 01 C 8840, 2003 U.S. Dist. LEXIS 9982, at *20-

15   *21 (N.D. Ill. June 12, 2003) (seven sufficient); *In re Accelr8 Tech. Corp. Sec. Litig.*, 147 F. Supp.

16   2d 1049, 1057 (D. Colo. 2001) (two sufficient).  Further, the media extensively covered PMI during

17   the Class Period.  Steinholt Decl., ¶16.  *Bloomberg* alone issued 250 media reports during the Class

18   Period.  *Id*.  This, too, supports a finding of efficiency.  *See Cheney*, 213 F.R.D. at 499.

19          The court in *Cammer* stated that market efficiency would be supported by the existence of

20   market makers because they "ensure completion of the market mechanism" by "react[ing] swiftly to

21   company news and reported financial results by buying or selling stock and driving it to a changed

22   price level."  711 F. Supp. at 1286-87.  Transactions on the NYSE go through designated specialists

23   (as opposed to market makers) who are responsible for maintaining a fair, competitive, orderly and

24   efficient market.  Steinholt Decl., ¶17.  This *Cammer* factor also relates to the presence of

25   sophisticated investors, including institutional investors, which are important in ensuring that the

26   security is traded in an efficient market.  *See Cammer*, 711 F. Supp. at 1286.  During the Class

27   Period, 379 institutions owned from 82.76 to 93.26 million shares of PMI, further demonstrating that

28   PMI stock traded in an efficient market.  Steinholt Decl., ¶19.

1    "A company's ability to file an S-3 Registration Statement is 'an important factor' because

2    'eligibility to file the S-3 form is predicated upon the SEC's belief that the market for the company's

3    stock already operates efficiently and that further disclosure is unnecessary, as the market price has

4    already accounted for relevant information.'" *In re Accredo Health, Inc.*, No. 03-2216 DP, 2006

5    U.S. Dist. LEXIS 97621, at *24 n.4 (W.D. Tenn. Mar. 7, 2006); *Cammer*, 711 F. Supp. at 1284

6    (same).  PMI met the requirements for filing a Form S-3 (a company has to be a reporting company

7    for 12 months and have $75 million in voting stock held by non-affiliates).  Steinholt Decl., ¶20.

8    The "cause and effect" factor is the "essence of an efficient market and the foundation for the

9    fraud on the market theory."  *Cammer*, 711 F. Supp. at 1287.  Here, there are empirical facts

10   showing a cause-and-effect relationship between unexpected corporate events or financial releases

11   and an immediate response in the stock price.  Steinholt Decl., ¶¶21-23.  Mr. Steinholt analyzed the

12   stock price reaction to disclosures of information regarding the Company.  Steinholt Decl., Ex. D.

13   For example on July 31, 2007, following PMI's earnings release below investor expectations, the

14   share price declined from $37.27 to $34.07, or 8.6%, a decline that was statistically significant.

15   Steinholt Decl., ¶22.  Through a review and analysis of the public mix of information throughout the

16   Class Period, Mr. Steinholt "found that new material information was quickly incorporated in the

17   Company's stock price during the relevant time period." *Id*. ¶24.  Mr. Steinholt "found no evidence

18   of market inefficiency." *Id.*

19   Having satisfied each of the *Cammer* factors, it is clear that PMI stock traded in an efficient

20   market and that plaintiff may rely upon the "fraud on the market" presumption.

21          **2.      A Class Action Is Superior to Other Available Methods for
                       Resolving This Controversy**
22
23   Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other

     available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).
24
     Courts have recognized that the class action device is superior to other available methods for the fair
25
     and efficient adjudication of controversies involving a large number of purchasers of securities
26
     injured by violations of the securities laws.  "[A] class action is clearly the preferred mechanism for
27
     adjudicating these [securities fraud] cases." *DJ Orthopedics*, 2003 U.S. Dist. LEXIS 21534, at *29;
28

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI          - 22 -

1   *Alco*, 158 F.R.D. at 155 ("Class treatment has proven to be the most effective and efficient way of

2   bringing security fraud actions."). Indeed, "[i]t is well settled that the class action device is the most

3   efficient means of litigating securities fraud suits, such as the one before us, where the class 'consists

4   of numerous investors, many of whom in all likelihood have individual claims too small to warrant

5   an individual suit.'" *Knapp v. Gomez*, No. 87-0067-H(M), 1991 U.S. Dist. LEXIS 11012, at *9

6   (S.D. Cal. June 26, 1991). Here, class certification is both useful and necessary and the class action

7   device offers judicial efficiencies because it permits common claims and issues to be tried only once,

8   with binding effect on all parties. Class representation is the only way to afford relief to those whose

9   claims are too small to permit them to bring individual suits. To deny class certification would be to

10  "clos[e] the door of justice to all small claimants. This is what we think the class suit practice was to

11  prevent." *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir. 1941).

12          To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for

13  the court to consider:

14                  (A)     the class members' interests in individually controlling the
                    prosecution . . . of separate actions;

15
                    (B)     the extent and nature of any litigation concerning the controversy
16                  already begun by . . . class members;

17                  (C)     the desirability . . . of concentrating the litigation of the claims in the
                    particular forum; and
18
                    (D)     the likely difficulties in managing a class action.
19
20  Fed. R. Civ. P. 23(b)(3). Each of these factors is satisfied in this case. The number of class

21  members is far too numerous and the typical claim is too small for each individual class member to

22  maintain a separate action. *See DJ Orthopedics*, 2003 U.S. Dist. LEXIS 21534, at *29 ("[L]itigation

23  costs might dwarf potential recovery for many class members, thereby placing a significant burden

24  on plaintiffs.").

25          The class action device is the only viable vehicle by which the vast majority of persons

26  injured by Defendants' wrongful conduct may obtain a remedy. As the Ninth Circuit stated in

27  *Epstein*, "it is difficult to imagine a case where class certification would be more appropriate.

28  Without it, thousands of identical complaints by former MCA shareholders would have to be filed –

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI                          - 23 -

1   the very result the class action mechanism was designed to avoid."  50 F.3d at 668; *see also Alco*,

2   158 F.R.D. at 155 ("The Ninth Circuit has repeatedly endorsed class actions for securities actions.");

3   *Schaefer*, 169 F.R.D. at 130 ("Courts have generally found that actions for securities fraud actions

4   are usually best maintained as class actions.").

5          Further, the nationwide geographical dispersion of the class members, based upon PMI's sale

6   of the stock on a national exchange, makes it desirable that litigation of the claims involved be

7   concentrated in this forum.  *See Alco*, 158 F.R.D. at 153-54 ("Whether or not the Class numbers in

8   the hundreds or in the thousands, joinder is clearly impractical where a large group of people,

9   dispersed all across the country, are involved.").

10          Finally, Plaintiff can foresee no management difficulties which would preclude this action

11   from being maintained as a class action and is confident that any potential management problems

12   can be addressed and resolved by the parties or by this Court.  In any event, possible management

13   problems are not, standing alone, grounds for denying this motion.  In *In re Sugar Indus. Antitrust*

14   *Litig*., No. 201, 1976 U.S. Dist. LEXIS 14955 (N.D. Cal. May 21, 1976), the court stated:

15          [D]enial of class certification because of conjured manageability problems is
            disfavored among both the courts and the legal commentators because a court
16          refusing to certify a class action on the basis of vaguely perceived manageability
            obstacles is acting counter to the policy behind Rule 23 . . . .
17

18   *Id*. at *75; *accord Yaffe v. Powers*, 454 F.2d 1362, 1365 (1st Cir. 1972).

19          The Supreme Court has endorsed the superiority of the class action device for resolving

     securities claims:
20
            The aggregation of individual claims in the context of a classwide suit is an
21          evolutionary response to the existence of injuries unremedied by the regulatory
            action of government.  Where it is not economically feasible to obtain relief within
22          the traditional framework of a multiplicity of small individual suits for damages,
            aggrieved persons may be without any effective redress unless they may employ the
23          class-action device.

24   *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).  Here, too, judicial economy and the

25   best interests of the class members favor class certification.  For the reasons enumerated above, the

26   proposed Class satisfies the requirements of Rule 23(b)(3).

27

28

516206_1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI                          - 24 -

1   **IV.    CONCLUSION**

2          For the foregoing reasons, Plaintiff respectfully requests entry of an order certifying this

3   action as a class action pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as class

4   representative, and appointing Robbins Geller as class counsel.

5   DATED:  May 6, 2010                          Respectfully submitted,

6                                                ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
7                                                DANIEL S. DROSMAN

8

9                                                _____s/ DANIEL S. DROSMAN_____
                                                      DANIEL S. DROSMAN
10
                                                 655 West Broadway, Suite 1900
11                                               San Diego, CA  92101
                                                 Telephone:  619/231-1058
12                                               619/231-7423 (fax)

13                                               ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
14                                               DANIEL J. PFEFFERBAUM
                                                 PHILLIP G. FREEMON
15                                               100 Pine Street, Suite 2600
                                                 San Francisco, CA  94111
16                                               Telephone:  415/288-4545
                                                 415/288-4534 (fax)
17
                                                 Lead Counsel for Plaintiffs
18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION; MEM OF P&A IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:08-cv-01405-SI                      - 25 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I further certify that I caused this document to be forwarded to the following Designated Internet Site at:  http://securities.stanford.edu.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 6, 2010.

         s/ DANIEL S. DROSMAN
         DANIEL S. DROSMAN

         ROBBINS GELLER RUDMAN
           & DOWD LLP
         655 West Broadway, Suite 1900
         San Diego, CA  92101-3301
         Telephone:  619/231-1058
         619/231-7423 (fax)

         E-mail:  ddrosman@rgrdlaw.com

## Mailing Information for a Case 3:08-cv-01405-SI

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Daniel S. Drosman**
  DanD@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Lawrence Timothy Fisher**
  ltfisher@bramsonplutzik.com,dschroeder@bramsonplutzik.com

- **Meredith N. Landy**
  mlandy@omm.com,vtran@omm.com,sfolchi@omm.com,mpaul@omm.com,jcoakley@omm.com

- **Jeffrey W. Lawrence**
  jeffreyl@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,jdecena@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,khuang@rgrdlaw.com,gfreemon@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com

- **Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees Represented by Local 85 of the Amalgamated Transit Union**
  sward@barrack.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **Samuel M. Ward**
  sward@barrack.com,lxlamb@barrack.com,kisbell@barrack.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,travisd@rgrdlaw.com,cwood@rgrdlaw.com,e_file_sd@rgrdlaw.com,jdecena@rgrdlaw.com,e_file_sf@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Catherine J Kowalewski
Lerach Coughlin et al LLP
655 W Broadway #1900
San Diego, CA 92101

Alan R. Plutzik
Barroway Topaz Kessler Meltzer & Check LLP
2125 Oak Grove Road
Suite 120
Walnut Creek, CA 94598

Dhaivat H. Shah
O'Melveny & Myers LLP
2765 Sand Hill Road
Menlo Park, CA 94025

David C. Walton
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101-3301
```