ROBBINS GELLER RUDMAN
  & DOWD LLP
KEITH F. PARK (54275)
DANIEL S. DROSMAN (200643)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
keithp@rgrdlaw.com
ddrosman@rgrdlaw.com
    – and –
DANIEL J. PFEFFERBAUM (248631)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
dpfefferbaum@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re THE PMI GROUP, INC. SECURITIES LITIGATION | ) ) ) | Master File No. 3:08-cv-01405-SI |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT |
| ALL ACTIONS. | ) ) ) | AND THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT THEREOF |

DATE: December 16, 2010
TIME: 9:00 a.m.
COURTROOM: The Honorable Susan Illston

579835_1

1

# TABLE OF CONTENTS

2                                                                                          **Page**

3   I.      SUMMARY OF ARGUMENT ...................................................................1

4   II.     THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
            SETTLEMENTS.....................................................................................3
5
    III.    THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR
6           APPROVAL .............................................................................................5

7           A.     The Parties Could Identify the Strengths and Weaknesses of Their Cases ............5

8           B.     The Settlement Appropriately Balances the Risks of Litigation and the
                   Benefit to the Class of a Certain Recovery ...............................................6
9
                   1.     Continued Litigation Posed Substantial Risks in Establishing
10                        Liability.......................................................................7

11                 2.     Continued Litigation Posed Substantial Risks in Proving Damages ...........9

12                 3.     Balancing the Certainty of an Immediate Recovery Against the
                          Expense and Likely Duration of Protracted Litigation and Trial
13                        Favors Settlement.............................................................11

14          C.     The Recommendations of Experienced Counsel Heavily Favor Approval
                   of the Settlement .............................................................................12
15
            D.     Reaction of the Class Supports Approval of the Settlement................................13
16
    IV.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE
17          AND SHOULD BE APPROVED BY THE COURT ......................................13

18  V.      CONCLUSION.........................................................................................14

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND        - i -
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

5
*AUSA Life Ins. Co. v. Ernst & Young,*
     39 Fed. Appx. 667 (2d Cir. 2002) ................................................................10

6

7
*Backman v. Polaroid Corp.,*
     910 F.2d 10 (1st Cir. 1990) ........................................................................10

8
*Beecher v. Able,*
     575 F.2d 1010 (2d Cir. 1978) .....................................................................13

9

10
*Behrens v. Wometco Enters., Inc.,*
     118 F.R.D. 534 (S.D. Fla. 1988),
     *aff'd*, 899 F.2d 21 (11th Cir. 1990) .............................................................10

11

12
*Boyd v. Bechtel Corp.,*
     485 F. Supp. 610 (N.D. Cal. 1979) ...............................................5, 6, 11, 13

13

14
*Bullock v. Adm'r of Estate of Kircher,*
     84 F.R.D. 1 (D.N.J. 1979) ...........................................................................11

15

16
*Chatelain v. Prudential-Bache Sec.,*
     805 F. Supp. 209 (S.D.N.Y. 1992) ...............................................................10

17
*Class Plaintiffs v. Seattle,*
     955 F.2d 1268 (9th Cir. 1992) .....................................................................13

18

19
*Dura Pharms., Inc. v. Broudo,*
     544 U.S. 336 (2005) .....................................................................................9

20

21
*Ellis v. Naval Air Rework Facility,*
     87 F.R.D. 15 (N.D. Cal. 1980),
     *aff'd*, 661 F.2d 939 (9th Cir. 1981) ..........................................................4, 6, 12

22

23
*Ernst & Ernst v. Hochfelder,*
     425 U.S. 185 (1976) ......................................................................................7

24
*Fisher Bros. v. Cambridge-Lee Indus., Inc.,*
     630 F. Supp. 482 (E.D. Pa. 1985) ..................................................................12

25

26
*Girsh v. Jepson,*
     521 F.2d 153 (3d Cir. 1975) ......................................................................6, 11

27

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                      - ii -

1

2                                                                                        **Page**

3  *Hughes v. Microsoft Corp.*,
       No. C98-1646C, 2001 U.S. Dist. LEXIS 5976
4      (W.D. Wash. Mar. 26, 2001) .................................................................4, 5

5  *In re "Agent Orange" Prod. Liab. Litig.*,
       611 F. Supp. 1396 (E.D.N.Y. 1985) .........................................................14
6

7  *In re Am. Bank Note Holographics*,
       127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................13
8

9  *In re Apple Computer Sec. Litig.*,
       No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
10     (N.D. Cal. Sept. 6, 1991) ........................................................................10

11 *In re Chicken Antitrust Litig. Am. Poultry*,
       669 F.2d 228 (5th Cir. 1982) ...................................................................14
12

13 *In re Corrugated Container Antitrust Litig.*,
       643 F.2d 195 (5th Cir. 1981),
14     *aff'd in part and rev'd in part on other grounds*,
       818 F.2d 179 (2d Cir. 1987).....................................................................14

15 *In re Ikon Office Solutions, Inc.*,
       194 F.R.D. 166 (E.D. Pa. 2000).................................................................7
16

17 *In re Mego Fin. Corp. Sec. Litig.*,
       213 F.3d 454 (9th Cir. 2000)................................................................5, 6, 14
18

19 *In re Mfrs. Life Ins. Co. Premium Litig.*,
       No. MDL 1109, 1998 U.S. Dist. LEXIS 23217
20     (S.D. Cal. Dec. 21, 1998).....................................................................10, 13

21 *In re PaineWebber Ltd. P'ships Litig.*,
       171 F.R.D. 104 (S.D.N.Y.),
22     *aff'd*, 117 F.3d 721 (2d Cir. 1997) ...........................................................5

23 *In re Silicon Graphics, Inc. Sec. Litig.*,
       183 F.3d 970 (9th Cir. 1999) .....................................................................7
24

25 *In re Warner Commc'ns Sec. Litig.*,
       618 F. Supp. 735 (S.D.N.Y. 1985),
26     *aff'd*, 798 F.2d 35 (2d Cir. 1986)..................................................6, 10, 12, 14

27

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND          - iii -
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

**Page**

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   720 F. Supp. 1379 (D. Ariz. 1989),
   *aff'd sub nom. Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................................4

*Lewis v. Newman*,
   59 F.R.D. 525 (S.D.N.Y. 1973) ....................................................................7

*Malchman v. Davis*,
   761 F.2d 893 (2d Cir. 1985)..........................................................................5

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ......................................................................4

*Milstein v. Huck*,
   600 F. Supp. 254 (E.D.N.Y. 1984) .............................................................11

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
   797 F.2d 799 (9th Cir. 1986) ........................................................................4

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).............................................................6, 13

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)..........................................................................3

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ................................................................ *passim*

*Petrovic v. AMOCO Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ....................................................................14

*Republic Nat'l Life Ins. Co. v. Beasley*,
   73 F.R.D. 658 (S.D.N.Y. 1977) ....................................................................7

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ..................................................................10

*S.C. Nat'l Bank v. Stone*,
   749 F. Supp. 1419 (D.S.C. 1990).................................................................14

*Sirota v. Solitron Devices, Inc.*,
   673 F.2d 566 (2d Cir. 1982)..........................................................................9

*Steinberg v. Carey*,
   470 F. Supp. 471 (S.D.N.Y. 1979) ...............................................................3

579835_1

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI
   - iv -

1
2                                                                                    **Page**

3    *Stoetzner v. United States Steel Corp.*,
4        897 F.2d 115 (3d Cir. 1990).............................................................................13

     *Torrisi v. Tucson Elec. Power Co.*,
5        8 F.3d 1370 (9th Cir. 1993) .............................................................................4

6    *TSC Indus. v. Northway, Inc.*,
7        426 U.S. 438 (1976)..........................................................................................7

8    *Util. Reform Project v. Bonneville Power Admin.*,
9        869 F.2d 437 (9th Cir. 1989) ...........................................................................4

     *Van Bronkhorst v. Safeco Corp.*,
10       529 F.2d 943 (9th Cir. 1976) ...........................................................................4

11   *Weinberger v. Kendrick*,
12       698 F.2d 61 (2d Cir. 1982)......................................................................4, 6, 14

13   *White v. NFL*,
         822 F. Supp. 1389 (D. Minn. 1993)................................................................13
14
15   *Williams v. First Nat'l Bank*,
         216 U.S. 582 (1910)..........................................................................................4

16   *Winkler v. NRD Mining, Ltd.*,
17       198 F.R.D. 355 (E.D.N.Y.),
         *aff'd sub nom. Winkler v. Wigley*,
18       242 F.3d 369 (2d Cir. 2000)............................................................................10

19   *Young v. Katz*,
         447 F.2d 431 (5th Cir. 1971) ..........................................................................11
20
21   **STATUTES, RULES AND REGULATIONS**

22   15 U.S.C.
         §78j(b)...........................................................................................................7, 8
23
     Federal Rules of Civil Procedure
24       Rule 23 ........................................................................................................3, 13
         Rule 23(e).....................................................................................................3, 4
25
26   17 C.F.R.
         §240-10b-5.......................................................................................................8
27
28

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND       - v -
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

1

2                                                                                              **Page**

3    **SECONDARY AUTHORITIES**

4    *Manual for Complex Litigation* (3d ed. 1995)
5        §30.42.................................................................................................................................5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND        - vi -
        MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

1  TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2        PLEASE TAKE NOTICE that, pursuant to an Order of the Court filed September 7, 2010

3  (Dkt. No. 93) (the "Notice Order"), on December 16, 2010, at 9:00 a.m., or as soon thereafter as

4  counsel may be heard before the Honorable Susan Illston, United States District Judge, at the Phillip

5  Burton United States Courthouse, Courtroom 10, 450 Golden Gate Avenue, San Francisco,

6  California, Lead Plaintiff will and hereby does move for final approval of the settlement with the

7  Defendants and the Plan of Allocation of settlement proceeds.  Lead Plaintiff's motion is based on

8  the Memorandum of Points and Authorities in Support of Motion for Final Approval of Settlement

9  and the Plan of Allocation of Settlement Proceeds set forth below, the Declaration of Daniel S.

10 Drosman in Support of Lead Plaintiff's Motion for (1) Final Approval of Settlement; (2) Approval of

11 the Plan of Allocation of Settlement Proceeds; and (3) Lead Counsel's Application for Attorneys'

12 Fees and Expenses and Lead Plaintiff's Expenses ("Drosman Decl."), the Declaration of Malcolm J.

13 Auble as Representative of Locals 302 and 612 of the International Union of Operating Engineers-

14 Employers Construction Industry Retirement Trust in Support of Plaintiff's Motion for (1) Final

15 Approval of Settlement; (2) Approval of the Plan of Allocation of Settlement Proceeds; and (3)

16 Award of Attorneys' Fees and Expenses and Plaintiff's Expenses ("Auble Decl."), submitted

17 herewith, the Stipulation of Settlement dated as of August 30, 2010 (Dkt. No. 89) (the

18 "Stipulation"),[1] all other pleadings and matters of record, and such additional evidence or argument

19 as may be presented at the hearing.

20                      **MEMORANDUM OF POINTS AND AUTHORITIES**

21 **I.    SUMMARY OF ARGUMENT**

22        Lead Plaintiff respectfully submits this memorandum of points and authorities in support of

23 its motion for final approval of the proposed settlement of this securities class action for

24 $31,250,000.   The settlement reached is the result of arm's-length and mediator-assisted

25

26 _____

27 [1]     Capitalized terms not otherwise defined in this memorandum have the same meanings set
   forth in the Stipulation.

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                         - 1 -

1   negotiations, and, in Lead Plaintiff's and Lead Counsel's view, reflects a fair resolution of the

2   respective claims and defenses asserted by Lead Plaintiff and the Defendants.[2]

3          This Litigation began in this District on March 12, 2008, with the filing of the first of two

4   class action complaints asserting that Defendants violated the federal securities laws by issuing false

5   and misleading statements about The PMI Group, Inc. ("PMI" or the "Company") revenues during

6   the Class Period.  Lead Plaintiff alleges that Defendants concealed PMI's exposure to delinquencies

7   and defaults on home mortgage loans it insured and that PMI improperly accounted for this

8   exposure.  Lead Plaintiff alleges that PMI deviated from its conservative historical business practices

9   and took on substantial risk by insuring high risk, low quality mortgages.  In addition, through its

10  subsidiary, Financial Guaranty Insurance Company ("FGIC"), PMI was exposed to massive losses

11  on financial guarantees on subprime mortgage backed securities.  Lead Plaintiff also alleges that

12  Defendants knowingly made material false and misleading statements throughout the Class Period,

13  including: (1) Defendants assured the market that their core strength was credit risk management,

14  despite the fact that PMI's systems could no longer adequately evaluate the exotic loan products and

15  reduced documentation loans it was insuring; (2) Defendants assured investors that they were

16  controlling for, or avoiding, risk layering when in fact risk layering was increasing; (3) Defendants

17  manipulated loss reserves and loss adjustment expenses in violation of Generally Accepted

18  Accounting Principles ("GAAP") to present a misleadingly positive projection of PMI's risk

19  exposure; and (4) Defendants failed to timely write down their investment in FGIC in violation of

20  GAAP.  These statements appeared in press releases, investor conference call transcripts, and SEC

21  filings, and allegedly caused PMI stock to trade at artificially inflated prices throughout the Class

22  Period.  The First Amended Complaint for Violation of the Federal Securities Laws alleges that the

23  truth regarding PMI's business operations, finances, business metrics, and future business and

24  financial prospects began to be revealed to the market through a series of partial disclosures from

25

26  _____

27  [2]      The Defendants are The PMI Group, Inc., L. Stephen Smith, Bradley M. Shuster, David H.
    Katkov, and Daniel P. Lofe, Jr.

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                    - 2 -

1  July 2007 through January 2008, reducing PMI's stock price 87% from $50.21 per share on February

2  7, 2007 to $6.47 per share on January 18, 2008.

3          An overview of Lead Plaintiff's claims, the risks presented by continued litigation with the

4  Defendants, and the history of the Litigation leading to this settlement are detailed in the Drosman

5  Declaration, filed herewith.   The Court is respectfully referred to the Drosman Declaration for a

6  detailed discussion of the factual and procedural history of the Litigation.

7          Federal Rule of Civil Procedure 23(e) requires that, to be approved, a class action settlement

8  must be fair, adequate, and reasonable.   The factors analyzed in this Circuit to determine the fairness

9  of a class action settlement are set forth in *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

10  625 (9th Cir. 1982), and are further discussed below.   In sum, however, Lead Plaintiff and its

11  counsel firmly believe that this settlement is fair, reasonable, and adequate based on their extensive

12  investigation, analysis of documents produced by PMI, interviews with potential witnesses,

13  consultation with experts, consideration of the amount obtained in settlement versus the risk of

14  obtaining a larger judgment at trial, the Defendants' ability to pay, the certainty of a recovery versus

15  the risks of no recovery at trial, past experience in other securities class actions, and the serious

16  disputes between the Lead Plaintiff and the Defendants concerning liability and damages.   In the

17  light of these considerations, Lead Plaintiff and its counsel recommend that the settlement be

18  approved by this Court.[3]

19  **II.    THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
       SETTLEMENTS**

20

21          It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the

22  preferred means of dispute resolution."   *Officers for Justice*, 688 F.2d at 625.   Class action suits

23  readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the

24  outcome, and the typical length of the litigation.   "[T]here is an overriding public interest in settling

25  _____

26  [3]     In reviewing this settlement under Rule 23, the Court is not required to substitute its business
     judgment for that of counsel, *Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979); the settlement

27  should be approved if it is within a "range of reasonableness," *Newman v. Stein*, 464 F.2d 689, 693
     (2d Cir. 1972).

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                     - 3 -

1    and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco*

2    *Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Util. Reform Project v. Bonneville Power Admin.*, 869

3    F.2d 437, 443 (9th Cir. 1989).[4]

4            In approving a proposed settlement of a class action under Federal Rule of Civil Procedure

5    23(e), a court must find that the proposed settlement is "fair, adequate and reasonable."[5]  The Ninth

6    Circuit has provided a list of factors which may be considered in evaluating the fairness of a class

7    action settlement:

8            Although Rule 23(e) is silent respecting the standard by which a proposed settlement
             is to be evaluated, the universally applied standard is whether the settlement is
9            fundamentally fair, adequate and reasonable.   The district court's ultimate
             determination will necessarily involve a balancing of several factors which may
10           include, among others, some or all of the following: the strength of plaintiffs' case;
             the risk, expense, complexity, and likely duration of further litigation; the risk of
11           maintaining class action status throughout the trial; the amount offered in settlement;
             the extent of discovery completed, and the stage of the proceedings; the experience
12           and views of counsel; the presence of a governmental participant; and the reaction of
             the class members to the proposed settlement.

13
     *Officers for Justice*, 688 F.2d at 625 (citations omitted).  *Accord Torrisi v. Tucson Elec. Power Co.*,
14
     8 F.3d 1370, 1375 (9th Cir. 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp.
15
     1379 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992).
16
            The district court must exercise sound discretion in approving a settlement. *Torrisi*, 8 F.3d at
17
     1375; *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th
18
     Cir. 1981).  However, a strong initial presumption of fairness attaches to a proposed settlement if it
19
     was reached by experienced counsel after arm's-length negotiations, and great weight is accorded to
20
     the recommendations of counsel, who are most closely acquainted with the facts of the underlying
21
     litigation. *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *21 (W.D.
22
     Wash. Mar. 26, 2001).  Therefore, in exercising its discretion, "the court's intrusion upon what is
23
     _____

24   [4]     The law always favors the compromise of disputed claims, *Williams v. First Nat'l Bank*, 216
     U.S. 582, 595 (1910); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir.
25   1986); including those asserted in stockholder class actions, *Weinberger v. Kendrick*, 698 F.2d 61,
     73 (2d Cir. 1982).
26
     [5]     *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178
27   (9th Cir. 1977).

28

     MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
     MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                        - 4 -

otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit defines the limits of the inquiry to be made by the Court in the following manner:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Id.* (emphasis in original). As explained below and in the Drosman Declaration, application of these criteria shows that this settlement warrants the Court's approval.

Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the settlement is the product of extensive arm's-length negotiations, including two mediations with the Honorable Layn R. Phillips (Ret.). *Hughes*, 2001 U.S. Dist. LEXIS 5976, at *17 (finding mediator's involvement supports settlement approval). Drosman Decl., ¶¶69, 70. Finally, it is the considered judgment of counsel for the Settling Parties that this settlement is a fair, reasonable, and adequate resolution of the Litigation. *See Hughes*, 2001 U.S. Dist. LEXIS 5976, at *20-*21; *Manual for Complex Litigation* §30.42 (3d ed. 1995).[6]

## III.   THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR APPROVAL

### A.   The Parties Could Identify the Strengths and Weaknesses of Their Cases

The stage of the proceedings and the amount of discovery completed is one of the factors that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See In re*

---

[6]      *Accord Malchman v. Davis*, 761 F.2d 893, 903 (2d Cir. 1985); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

579835_1

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                                    - 5 -

1  *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Girsh v. Jepson*, 521 F.2d 153, 157

2  (3d Cir. 1975); *see also Weinberger*, 698 F.2d at 74; *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at

3  616-17.

4      Here, Lead Counsel conducted an extensive informal investigation, including interviews of

5  potential witnesses knowledgeable about the facts, obtained and reviewed approximately 40,000

6  pages of documents produced by PMI, worked with damage consultants, experts in the mortgage

7  insurance industry, materiality, loss causation and market efficiency, and thoroughly researched the

8  law regarding the claims and defenses asserted.  Drosman Decl., ¶¶3, 32-37, 45, 54-58.  The Settling

9  Parties also participated in two mediation sessions with the Honorable Layn R. Phillips (Ret.), where

10  the strengths and weaknesses of each side's claims and defenses were thoroughly explored.  As a

11  result, Lead Counsel have a more than adequate understanding of the case and sufficient information

12  to make an informed decision regarding the fairness of the settlement before presenting it to the

13  Court.  *See Mego Fin.*, 213 F.3d at 459 (finding parties could identify strengths and weaknesses of

14  claims without formal discovery).

15  **B.     The Settlement Appropriately Balances the Risks of Litigation and
          the Benefit to the Class of a Certain Recovery**

16      To determine whether the proposed settlement is fair, reasonable, and adequate, the Court

17  must balance the continuing risks of litigation against the benefits afforded to Class Members and

18  the immediacy and certainty of a substantial recovery.  *Mego Fin.*, 213 F.3d at 458; *Girsh*, 521 F.2d

19  at 157; *Boyd*, 485 F. Supp. at 616-17; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 741

20  (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  In other words, "'[t]he Court shall consider the

21  vagaries of litigation and compare the significance of immediate recovery by way of the compromise

22  to the mere possibility of relief in the future, after protracted and expensive litigation.  In this

23  respect, "[i]t has been held proper to take the bird in hand instead of a prospective flock in the

24  bush."'"  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)

25  (citations omitted).

26      In the context of approving class action settlements, courts attempting to balance these

27  factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain."

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                    - 6 -

1  *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v.*

2  *Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977).  This is even more so today, in this post-Private Securities

3  Litigation Reform Act of 1995 ("PSLRA") environment, amid defendants' constant attempts to push

4  the envelope and contours of the PSLRA.  *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194

5  (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the

6  wake of the PSLRA").  In particular, the Ninth Circuit's decisions in *In re Silicon Graphics, Inc.*

7  *Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) and its progeny have interpreted the PSLRA's

8  heightened pleading standards in an expansive manner and have established what is commonly

9  accepted to be one of the most stringent standards of any circuit to pleading a successful §10(b)

10  claim.

11        Here, a balance of these factors weighs heavily in support of approval of the settlement and

12  unquestionably avoids another distinct possibility – no recovery for the Class.

13        **1.    Continued Litigation Posed Substantial Risks in Establishing**
                  **Liability**

14        In order to prevail on its §10(b) claims at trial, Lead Plaintiff would have had the burden of

15  establishing the liability of the Defendants to the satisfaction of the jury and the Court.  Lead

16  Plaintiff would have had to prove, *inter alia*, that the alleged misstatements were material, *TSC*

17  *Indus. v. Northway, Inc.*, 426 U.S. 438 (1976), and made with scienter (actual knowledge or reckless

18  disregard for the truth), *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976).  Accordingly, in order to

19  prevail on the §10(b) claims, Lead Plaintiff would have had to prove that the Defendants participated

20  in the public dissemination of misleading information, that the information was material to investors

21  in determining whether to purchase PMI common stock, that the information materially affected the

22  price of PMI common stock, and that the Defendants withheld information either with actual intent

23  to deceive, manipulate, or defraud, or that they recklessly disregarded these facts and their

24  consequences.

25        If Lead Plaintiff was to proceed to trial, there would be a substantial risk that the evidence in

26  support of the technical aspects of Lead Plaintiff's allegations would not convince a jury to find in

27  the Class's favor.  Lead Plaintiff believes that the evidence supports its allegations and would

28

1   present highly respected professionals as expert witnesses who would testify accordingly. However,

2   there is no guarantee that a jury – likely comprised of lay people with little accounting or financial

3   expertise – would be persuaded by this testimony.  In that event, the Class would recover nothing.

4   Defendants were prepared to argue at trial that they did not act with the requisite scienter, and

5   that Lead Plaintiff could not demonstrate loss causation – both key elements of Lead Plaintiff's

6   §10(b) and Rule 10b-5 claims.  Proving scienter and loss causation would have been a significant

7   hurdle to Lead Plaintiff's chances of succeeding at trial.  At the mediation, Defendants argued that

8   Lead Plaintiff would be unable to establish multiple elements of its securities claim.  First,

9   Defendants argued that Lead Plaintiff would be unable to establish the falsity of Defendants' Class

10  Period statements regarding: (i) FGIC, (ii) delegated underwriting, (iii) loss reserves, and (iv) risk

11  management.  Defendants characterized the collapse of the housing market in late 2007 as an

12  unprecedented "perfect storm" which was not predicted by economists, analysts, and participants.  In

13  response to Lead Plaintiff's allegations that Defendants had internal reports and metrics which

14  rendered their statements to the market knowingly false and misleading, Defendants maintained that

15  they disclosed negative information as it developed and could not be held liable for failing to foresee

16  the speed and depth of the coming housing market collapse.  In support of their argument that their

17  statements were truthful, Defendants pointed to the loan default rate decline in April 2007,

18  Defendants' disclosure that defaults were increasing in July 2007, Defendants' pre-announcement of

19  losses in October 2007, and that their outside auditor approved the valuation of FGIC at year-end

20  2007.  Because their statements were truthful, Defendants argued, Lead Plaintiff would also be

21  unable to demonstrate scienter.  Thus, it was quite possible that Lead Counsel would depose all

22  Defendants and those with knowledge about the case and yet adduce insufficient evidence to satisfy

23  their burden of proof on this issue at trial.  Notwithstanding these difficulties of proof, Lead Plaintiff

24  believes that there were strong indicators of scienter, particularly given the information developed

25  through interviews with several knowledgeable confidential witnesses.  Thus, although Lead

26  Plaintiff believes its claims are meritorious and supported by the evidence obtained to date, further

27  litigation to establish liability posed a potential threat to any recovery.

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                    - 8 -

## 2.  Continued Litigation Posed Substantial Risks in Proving Damages

Lead Counsel are mindful that if they were able to overcome the obstacles to establishing liability at trial, they would still face the additional risks of proving loss causation and damages. Lead Counsel believe that if they continued to trial they would be able to establish damages higher than the settlement amount.  However, this assumes that Lead Plaintiff prevailed on the damage issues presented in this case.  Throughout the Litigation, the Defendants challenged, among other things, loss causation.  The United States Supreme Court has confirmed that the law requires that "a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). Defendants asserted that Lead Plaintiff would be unable to prove loss causation.  Defendants contended that loss causation requires a corrective disclosure which directly reveals the fraud alleged – a standard disputed by Lead Plaintiff.  Defendants characterized the partial disclosures as revealing increased losses, increased default rates, and lowered earnings guidance – but not the fraud alleged, including deviations from historical business practices, manipulation of loss reserves or the failure to write down FGIC.  Additionally, Defendants argued that the Company was subject to an industry-wide downturn which equally affected most, if not all, of its competitors – thus rebutting the allegation that the stock price declined as a result of fraud.

Moreover, expert testimony is necessary in order to fix both the existence and amount of damages.  *See, e.g.*, *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 576-78 (2d Cir. 1982).  Such an expert evaluation is based not only on stock price history but on other more elusive factors, including corporate asset value, cash flow, income and growth prospects for the future, industry and economic trends, the quality of management, the nature and amount of liabilities, and many other variables.  At trial, Lead Plaintiff would likely have faced a motion *in limine* by Defendants to preclude its damage expert's testimony under the *Daubert* test and risked a decision that the expert's valuation model might not be admissible in evidence.

If Lead Plaintiff survived a *Daubert* motion, the loss causation analysis and damage valuations of Lead Plaintiff's and the Defendants' experts would undoubtedly vary substantially.  In

579835_1

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                                       - 9 -

1   the "battle of experts," it is impossible to predict with any certainty which arguments would find

2   favor with the jury. *See Warner Commc'ns*, 618 F. Supp. at 744-45 (approving settlement where "it

3   is virtually impossible to predict with any certainty which testimony would be credited, and

4   ultimately, which damages would be found to have been caused by actionable, rather than the myriad

5   nonactionable factors such as general market conditions"); *see also Chatelain v. Prudential-Bache*

6   *Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542

7   (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).   Thus, even if the Class prevailed in

8   establishing liability, significant additional risks would remain in establishing the existence of

9   damages.

10         In summary, although Lead Counsel believe that the case is meritorious, their experience has

11   taught them how the risks discussed above can render the outcome of a trial extremely uncertain.

12   *See In re Mfrs. Life Ins. Co. Premium Litig.*, No. MDL 1109, 1998 U.S. Dist. LEXIS 23217, at *17

13   (S.D. Cal. Dec. 21, 1998) ("even if it is assumed that a successful outcome for plaintiffs at summary

14   judgment or at trial would yield a greater recovery than the Settlement – which is not at all apparent

15   – there is easily enough uncertainty in the mix to support settling the dispute rather than risking no

16   recovery in future proceedings").

17         Moreover, even if Lead Plaintiff was to prevail at trial, risks to the Class remain.   For

18   example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS

19   15608 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for the plaintiff after an extended trial.

20   Based upon the jury's findings, recoverable damages would have exceeded $100 million.   However,

21   the court overturned the verdict, entering judgment n.o.v. for the individual defendants, and ordered

22   a new trial with respect to the corporate defendant.   In another case, the class won a jury verdict and

23   a motion for j.n.o.v. was denied, but on appeal the judgment was reversed and the case dismissed.

24   *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990).   *See also Robbins v. Koger Props., Inc.*,

25   116 F.3d 1441, 1449 (11th Cir. 1997) (reversing on appeal $81 million jury verdict and dismissing

26   securities action with prejudice); *AUSA Life Ins. Co. v. Ernst & Young*, 39 Fed. Appx. 667 (2d Cir.

27   2002) (affirming district court's dismissal after a full bench trial and earlier appeal and remand);

28   *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y.) (granting defendants' motion for judgment

579835_1

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                      - 10 -

1  as a matter of law after jury verdict for plaintiff), *aff'd sub nom. Winkler v. Wigley*, 242 F.3d 369 (2d

2  Cir. 2000).

3       In addition, proceeding with this Litigation through trial and an appeal poses a real risk that

4  the Defendants would not be able to satisfy any judgment or fund a settlement down the road.  In

5  March 2010, according to PMI's annual report on Form 10-K, the Company reported net losses for

6  the three years ending December 31, 2009, 2008, and 2007 of $659,326,000, $928,508,000, and

7  $915,326,000, respectively.  In its latest quarterly report on Form 10Q, PMI reported net losses for

8  the 3 month and 6 month period ended June 30, 2010 of $150,560,000 and $307,547,000,

9  respectively.  Not surprisingly, the entire amount of the settlement is funded by insurance.

10       These were all substantial impediments.  Nonetheless, Lead Counsel's pursuit of Lead

11  Plaintiff's claims has resulted in a substantial and certain recovery for the Class.  A careful

12  consideration of the risks discussed above supports approval of the settlement as fair, adequate, and

13  reasonable.

14       **3.**     **Balancing the Certainty of an Immediate Recovery Against the**

15                 **Expense and Likely Duration of Protracted Litigation and**
               **Trial Favors Settlement**

16       The immediacy and certainty of a recovery is another factor for the Court to balance in

17  determining whether the proposed settlement is fair, adequate, and reasonable. *E.g., Girsh*, 521 F.2d

18  at 157.  Courts consistently have held that "[t]he expense and possible duration of the litigation

19  should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F.

20  Supp. 254, 267 (E.D.N.Y. 1984); *Officers for Justice*, 688 F.2d at 626; *Boyd*, 485 F. Supp. at 616-17;

21  *Bullock v. Adm'r of Estate of Kircher*, 84 F.R.D. 1, 10 (D.N.J. 1979).  Therefore, the benefit of the

22  present settlement must also be balanced against the expense of achieving a more favorable result at

23  trial. *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

24       Approval of the settlement will mean a present recovery for eligible claimants.  If not for this

25  settlement, the case would have continued through the completion of very expensive discovery,

26  summary judgment, trial, and likely appeals.  A trial would have occupied a number of attorneys for

27  weeks and would have required substantial and costly expert testimony on both sides.  Moreover, a

28  judgment favorable to the Class, in light of the contested nature of virtually every aspect of this case,

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI       - 11 -

1   would unquestionably be the subject of post-trial motions and further appeals, which could prolong

2   the case for several more years.  *See, e.g., Warner Commc'ns*, 618 F. Supp. at 745 (delay from

3   appeals is a factor to be considered).  Therefore, delay, not just at the trial stage, but through post-

4   trial motions and the appellate process as well, could force Class Members to wait many more years

5   for any recovery, further reducing its value.  Accordingly, the settlement of this Litigation will

6   ensure a recovery, and eliminate the risk of no recovery at all or one delayed by years of

7   proceedings.

8          Moreover, as the Ninth Circuit has made clear, the very essence of a settlement agreement is

9   compromise, "'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*,

10   688 F.2d at 624 (citation omitted).

11          "Naturally, the agreement reached normally embodies a compromise; in exchange
            for the saving of cost and elimination of risk, the parties each give up something they
12          might have won had they proceeded with litigation."

13   *Id.* (citation omitted); *Ellis*, 87 F.R.D. at 19 (as a *quid pro quo* for not having to undergo the

14   uncertainties and expenses of litigation, the plaintiff must be willing to moderate the measure of its

15   demands).  Accordingly, the fact that the Class potentially could have achieved a greater recovery

16   after trial does not preclude the Court from finding that the settlement is within a "range of

17   reasonableness" that is appropriate for approval.  *E.g., Warner Commc'ns*, 618 F. Supp. at 745.

18   **C.     The Recommendations of Experienced Counsel Heavily Favor
                Approval of the Settlement**

19
20          Experienced counsel, negotiating at arm's length, have weighed the factors discussed above

21   and endorse the settlement.  As courts have stated, the view of the attorneys actively conducting the

22   litigation, while not conclusive, "is entitled to significant weight."  *Fisher Bros. v. Cambridge-Lee*

23   *Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced

24   counsel involved in the case approved the settlement after hard-fought negotiations is entitled to

25   considerable weight").

26          This action has been litigated and settled by experienced and competent counsel representing

27   the Lead Plaintiff and the Defendants.  Lead Counsel are well known for their experience and

28   success in complex and class action litigation.  That qualified and well-informed counsel endorse the

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                          - 12 -

1  settlement as being fair, reasonable, and adequate to the Class heavily favors this Court's approval of

2  the settlement.

3      **D.    Reaction of the Class Supports Approval of the Settlement**

4      The mailing of the notice of the settlement to Class Members and nominees commenced on

5  September 17, 2010 and the summary notice was published in *Investor's Business Daily* on

6  September 21, 2010. The time period for objecting to the settlement will expire on November 5,

7  2010. However, to date, no objections to the settlement or the Plan of Allocation have been filed.[7]

8      Moreover, in the event objections are received, courts routinely approve settlements if they

9  otherwise meet the fairness requirements. *See, e.g.*, *Mfrs. Life Ins.*, 1998 U.S. Dist. LEXIS 23217, at

10  *24 ("[A] minuscule number of objectors is another factor favoring approval."); *Boyd*, 485 F. Supp.

11  at 624 (adequacy of settlement "persuasive" when 16% of class objected); *Stoetzner v. United States*

12  *Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (fact only 10% of class objected "strongly favors

13  settlement"); *Nat'l Rural Telecomms.*, 221 F.R.D. at 529 (absence of large number of objections

14  raises a strong presumption settlement is fair to class).

15  **IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND**
16           **ADEQUATE AND SHOULD BE APPROVED BY THE COURT**

17      Approval of a plan of allocation of settlement proceeds in a class action under Rule 23 of the

18  Federal Rules of Civil Procedure is governed by the same standards of review applicable to the

19  settlement as a whole – the plan must be fair, reasonable, and adequate. *Class Plaintiffs v. Seattle*,

20  955 F.2d 1268, 1284 (9th Cir. 1992). An allocation formula need only have a reasonable basis,

21  particularly if recommended by experienced class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420-

22  24 (D. Minn. 1993); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y.

23  2001).

24      District courts enjoy "broad supervisory powers over the administration of class-action

25  settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v.*

26  

27  [7]    In the event objections are made, Lead Plaintiff will address them in a reply brief to be filed

28  on or before November 15, 2010.

579835_1

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI      - 13 -

1 │ *Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669

2 │ F.2d 228, 238 (5th Cir. 1982).  Numerous courts have approved distribution plans that allocate the

3 │ settlement proceeds according to the relative strengths and weaknesses of the various claims.  *See*

4 │ *Warner Commc'ns*, 618 F. Supp. at 745; *Weinberger*, 698 F.2d at 78.  Thus, "if one set of claims had

5 │ a greater likelihood of ultimate success than another set of claims, it is appropriate to weigh

6 │ 'distribution of the settlement . . . in favor of plaintiffs whose claims comprise the set' that was more

7 │ likely to succeed."  *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1411 (E.D.N.Y.

8 │ 1985) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir. 1981)), *aff'd*

9 │ *in part and rev'd in part on other grounds*, 818 F.2d 179 (2d Cir. 1987).  Moreover, there is no

10 │ requirement that a settlement must benefit all class members equally.  *See Mego Fin.*, 213 F.3d at

11 │ 461; *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan

12 │ where class members received different levels of compensation and finding that no subgroup was

13 │ treated unfairly); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving

14 │ settlement where some class members did not share in recovery).

15 │      The decisions cited above acknowledge that the goal of a distribution plan is fairness to the

16 │ class as a whole, taking into consideration the strength of claims based on available evidence.  In

17 │ order to develop a fair distribution plan, Lead Counsel, in conjunction with their damages consultant

18 │ and loss causation and materiality expert, developed a plan of allocation that tracks the damage

19 │ theory of the case and, therefore, will necessarily result in a fair distribution of the settlement

20 │ proceeds.  Lead Plaintiff and Lead Counsel firmly believe that the Plan of Allocation will equitably

21 │ apportion the net settlement proceeds among eligible Class Members in accordance with the

22 │ principles set forth in the case law cited above and sound economic theory and should be approved.

23 │ **V.     CONCLUSION**

24 │      This settlement with the Defendants is fair, given the presence of skilled counsel for the

25 │ Settling Parties, the complexity of the facts at issue, further substantial expense and delay if this

26 │ Litigation were to continue to trial, the risks attendant to prevailing on a summary judgment motion,

27 │ at trial and/or subsequent appeals, the present benefit of the settlement to Class Members, the

28 │ uncertainties regarding PMI's ability to respond to a larger judgment, and the arm's-length

579835_1

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                    - 14 -

1   settlement negotiations.  Therefore, for the reasons discussed here and in the Drosman Declaration,

2   Lead Plaintiff respectfully requests this Court to approve the settlement of this Litigation and the

3   Plan of Allocation of settlement proceeds as fair, reasonable, and adequate.

4   DATED:  October 8, 2010                    Respectfully submitted,

5                                              ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
6                                              KEITH F. PARK
                                               DANIEL S. DROSMAN
7

8                                              _____
                                                        s/ Keith F. Park
9                                                       KEITH F. PARK

10                                             655 West Broadway, Suite 1900
                                               San Diego, CA  92101
11                                             Telephone:  619/231-1058
                                               619/231-7423 (fax)
12
                                               ROBBINS GELLER RUDMAN
13                                                & DOWD LLP
                                               DANIEL J. PFEFFERBAUM
14                                             Post Montgomery Center
                                               One Montgomery Street, Suite 1800
15                                             San Francisco, CA  94104
                                               Telephone:  415/288-4545
16                                             415/288-4534 (fax)

17                                             Lead Counsel for Lead Plaintiff

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                    - 15 -

1

<u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on October 8, 2010, I authorized the electronic filing of the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4  the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5  caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6  CM/ECF participants indicated on the attached Manual Notice List.

7        I further certify that I caused this document to be forwarded to the following Designated

8  Internet Site at:  http://securities.stanford.edu.

9        I certify under penalty of perjury under the laws of the United States of America that the

10  foregoing is true and correct.  Executed on October 8, 2010.

11

                                                   s/ Keith F. Park

12                                             KEITH F. PARK

13                                             ROBBINS GELLER RUDMAN
                                                    & DOWD LLP

14                                           655 West Broadway, Suite 1900
                                         San Diego, CA  92101-3301

15                                         Telephone:  619/231-1058
                                         619/231-7423 (fax)

16                                         E-mail:KeithP@rgrdlaw.com

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:08-cv-01405-SI

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Daniel S. Drosman**
  DanD@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Lawrence Timothy Fisher**
  ltfisher@bramsonplutzik.com,dschroeder@bramsonplutzik.com

- **Catherine J. Kowalewski**
  katek@rgrdlaw.com

- **Meredith N. Landy**
  mlandy@omm.com,vtran@omm.com,sfolchi@omm.com,mpaul@omm.com,jcoakley@omm.com

- **Jeffrey W. Lawrence**
  jeffreyl@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,jdecena@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Keith F. Park**
  keithp@rgrdlaw.com,karnold@rgrdlaw.com,jstark@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,khuang@rgrdlaw.com,gfreemon@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com

- **Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees Represented by Local 85 of the Amalgamated Transit Union**
  sward@barrack.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Samuel M. Ward**
  sward@barrack.com,lxlamb@barrack.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,jdecena@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Alan R. Plutzik
Barroway Topaz Kessler Meltzer & Check LLP
2125 Oak Grove Road
Suite 120
Walnut Creek, CA 94598

Dhaivat H. Shah
O'Melveny & Myers LLP
2765 Sand Hill Road
Menlo Park, CA 94025
```