ROBBINS GELLER RUDMAN
   & DOWD LLP
KEITH F. PARK (54275)
DANIEL S. DROSMAN (200643)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
keithp@rgrdlaw.com
ddrosman@rgrdlaw.com
   – and –
DANIEL J. PFEFFERBAUM (248631)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
dpfefferbaum@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re THE PMI GROUP, INC. SECURITIES LITIGATION | Master File No. 3:08-cv-01405-SI |
| | CLASS ACTION |
| This Document Relates To: | LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND LEAD PLAINTIFF'S EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
|    ALL ACTIONS. | |
| | DATE: December 16, 2010 |
| | TIME: 9:00 a.m. |
| | COURTROOM: The Honorable Susan Illston |

579865_1

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION .................................................................................................1

II.  FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION..........................3

III. AWARD OF ATTORNEYS' FEES ......................................................................3

  A.   The Legal Standards Governing the Award of Attorneys' Fees in Common
       Fund Cases Support the Requested Award........................................................3

       1.   A Reasonable Percentage of the Fund Recovered Is the
            Appropriate Method for Awarding Attorneys' Fees in Common
            Fund Cases ...............................................................................................3

       2.   A Fee of 24.5 Percent of the Fund Created Is Reasonable ........................6

  B.   Consideration of the Relevant Factors Used by Courts in the Ninth Circuit
       Justifies a Fee Award of 24.5 Percent in This Case.........................................6

       1.   The Result Achieved.................................................................................6

       2.   The Risks of Litigation ............................................................................7

       3.   The Skill Required and the Quality of the Work .......................................8

       4.   The Novelty and Difficulty of the Questions Presented .............................9

       5.   The Contingent Nature of the Fee and the Financial Burden
            Carried by Lead Counsel ..........................................................................9

       6.   A 24.5 Percent Fee Award Is Below the Average Fee Awarded in
            Similar Complex Class Action Litigation.................................................11

       7.   The Customary Fee .................................................................................13

       8.   Reaction of the Class and the Approval of the Requested
            Percentage by the Lead Plaintiff Supports the Award of a 24.5
            Percent Attorneys' Fee.............................................................................14

IV.  THE FEE AWARD SHOULD BE 24.5 PERCENT OF THE GROSS
     SETTLEMENT FUND.......................................................................................15

V.   THE REQUESTED EXPENSES SHOULD BE AWARDED.....................................16

  A.   Lead Counsel's Expenses are Reasonable and were Necessarily Incurred
       to Achieve the Benefit Obtained....................................................................16

  B.   Lead Plaintiff's Expenses in Representing the Class Should be Awarded...........18

VI.  CONCLUSION.................................................................................................18

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND          - i -
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

Page

**CASES**

*Abrams v. Lightolier Inc.*,
  50 F.3d 1204 (3d Cir. 1995)..................................................16

*Arenson v. Bd. of Trade*,
  372 F. Supp. 1349 (N.D. Ill. 1974) ..........................................9

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988),
  *aff'd*, 899 F.2d 21 (11th Cir. 1990) ........................................6

*Blum v. Stenson*,
  465 U.S. 886 (1984).......................................................4, 13

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
  8 F.3d 722 (10th Cir. 1993) ...............................................16

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) .............................................4

*Camden I Condo. Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ............................................4

*Cent. R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885).........................................................3

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005).........................................................9

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  741 F. Supp. 84 (S.D.N.Y. 1990) .........................................17

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)................................................4

*Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) .............................................4

*Gottlieb v. Wiles*,
  150 F.R.D. 174 (D. Colo. 1993),
  *rev'd on other grounds sub nom. Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) .............................................17

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) .............................................4

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

|  |  | Page |
|---|---|---|

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) ...........................................................................16

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) .........................................................................................6

*In re Alliance Gaming Corp. Sec. Litig.,*
    No. CV-S-04-0821-BES-PAL, slip op.
    (D. Nev. June 28, 2007) ................................................................................12

*In re Brocade Sec. Litig.,*
    No. C 05-02042 CRB, slip op.
    (N.D. Cal. Jan. 26, 2009) ..............................................................................12

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001) ..........................................................................15

*In re Cont'l Ill. Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) ...............................................................5, 13, 17

*In re Equity Funding Corp. Sec. Litig.,*
    438 F. Supp. 1303 (C.D. Cal. 1977) ...............................................................9

*In re Global Crossing Sec. & ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................15

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.,*
    No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627
    (C.D. Cal. June 10, 2005) ........................................................................7, 8, 12

*In re HI/FN, Inc. Sec. Litig.,*
    No. C-99-4531-SI, slip op.
    (N.D. Cal. May 20, 2003) .............................................................................12

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000) ................................................................8, 14

*In re Infonet Servs. Corp. Sec. Litig.,*
    No. CV-01-10456-NM(CWx), slip op.
    (C.D. Cal. July 26, 2004) ..............................................................................13

*In re Intermune, Inc. Sec. Litig.,*
    No. C-03-2954-SI, slip op.
    (N.D. Cal. Aug. 26, 2005) .............................................................................13

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND     - iii -
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

| | Page |
|---|---|

*In re King Res. Co. Sec. Litig.*,
  420 F. Supp. 610 (D. Colo. 1976)......................................................................6, 7, 9

*In re M.D.C. Holdings Sec. Litig.*,
  No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488
  (S.D. Cal. Aug. 30, 1990)........................................................................................13

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
  842 F. Supp. 733 (S.D.N.Y. 1994).........................................................................17

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1996)..................................................................16, 17

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)...................................................................................14

*In re Network Assocs. Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999).....................................................................15

*In re PETCO Corp. Sec. Litig.*,
  No. 05-CV-0823 H(RBB), slip op.
  (S.D. Cal. Sept. 2, 2008).........................................................................................12

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
  No. 888, 1994 WL 202394 (E.D. La. May 18, 1994).............................................10

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005)......................................................................11, 14, 15

*In re Specialty Labs., Inc. Sec. Litig.*,
  No. CV 02-04352-DDP(RCx), slip op.
  (C.D. Cal. Dec. 22, 2004)........................................................................................13

*In re Surebeam Corp. Sec. Litig.*,
  No. 03-CV-01721-JM(POR), slip op.
  (S.D. Cal. July 17, 2006).........................................................................................12

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001)...................................................................................13

*In re Synthroid Mktg. Litig.*,
  325 F.3d 974 (7th Cir. 2003)...................................................................................13

*In re Terayon Commc'n Sys., Inc. Sec. Litig.*,
  No. C-00-1967-MHP, slip op.
  (N.D. Cal. Oct. 3, 2007)..........................................................................................12

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

- iv -

*In re THQ, Inc. Sec. Litig.*,
    No. CV-00-01783-JFW(Ex), slip op.
    (C.D. Cal. June 23, 2003) ..............................................................................12

*In re Titan, Inc. Sec. Litig.*,
    No. 04-CV-0676-LAB(NLS), slip op.
    (S.D. Cal. Dec. 20, 2005) ..............................................................................13

*In re TUT Systems, Inc. Sec. Litig.*,
    No. C-01-2659-CW, slip op.
    (N.D. Cal. May 14, 2004) ..............................................................................13

*In re UTStarcom, Inc. Sec. Litig.*,
    Master File No. C-04-4908-JW(PVT), slip op.
    (N.D. Cal. August 31, 2010) ..........................................................................12

*In re Verisign, Inc. Sec. Litig.*,
    No. C-02-2270-JW(PVT), slip op.
    (N.D. Cal. Apr. 24, 2007) ..............................................................................12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ................................................................... *passim*

*In re Wireless Facilities, Inc. Sec. Litig.*,
    No. 04cv1589 NLS, slip op.
    (S.D. Cal. Jan. 13, 2009) ................................................................................12

*J.N. Futia Co. v. Phelps Dodge Indus., Inc.*,
    No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261
    (S.D.N.Y. Sept. 17, 1982) ................................................................................9

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...........................................................................9

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ...........................................................................5

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
    540 F.2d 102 (3d Cir. 1976) .............................................................................7

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977) ........................................................................14

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993) ................................................................16

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

– v –

|  | Page |
|---|---|
| *Paul, Johnson, Alston & Hunt v. Graulty,* <br> 886 F.2d 268 (9th Cir. 1989) ....................................................3, 4, 6, 9 | |
| *Phemister v. Harcourt Brace Jovanovich, Inc.,* <br> No. 77 C 39, 1984 U.S. Dist. LEXIS 23595 <br> (N.D. Ill. Sept. 14, 1984) ....................................................5 | |
| *Powers v. Eichen,* <br> 229 F.3d 1249 (9th Cir. 2000) ....................................................6, 15 | |
| *Six Mexican Workers v. Ariz. Citrus Growers,* <br> 904 F.2d 1301 (9th Cir. 1990) ....................................................4 | |
| *Swedish Hosp. Corp. v. Shalala,* <br> 1 F.3d 1261 (D.C. Cir. 1993) ....................................................4 | |
| *Thornberry v. Delta Air Lines,* <br> 676 F.2d 1240 (9th Cir. 1982), <br> *vacated on other grounds,* <br> 461 U.S. 952 (1983) ....................................................17 | |
| *Torrisi v. Tucson Elec. Power Co.,* <br> 8 F.3d 1370 (9th Cir. 1993) ....................................................4, 6 | |
| *Trustees v. Greenough,* <br> 105 U.S. 527 (1882) ....................................................3 | |
| *Vincent v. Hughes Air West, Inc.,* <br> 557 F.2d 759 (9th Cir. 1977) ....................................................3 | |
| *Vizcaino v. Microsoft Corp.,* <br> 142 F. Supp. 2d 1299 (W.D. Wash. 2001) ....................................................9 | |
| *Vizcaino v. Microsoft Corp.,* <br> 290 F.3d 1043 (9th Cir. 2002) ....................................................*passim* | |
| *Winkler v. NRD Mining, Ltd.,* <br> 198 F.R.D. 355 (E.D.N.Y.), <br> *aff'd sub nom. Winkler v. Wigley,* <br> 242 F.3d 369 (2d Cir. 2000) ....................................................11 | |

**STATUTES, RULES AND REGULATIONS**

15 U.S.C. <br>
§78u-4(a)(4) ....................................................18

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

- vi -

| | Page |
|---|---|

**SECONDARY AUTHORITIES**

1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
    §1.09................................................................................................14

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney:*
*The Implications of Economic Theory for Private Enforcement*
*of Law Through Class and Derivative Actions,*
    86 Colum. L. Rev. 669 (May 1986)........................................................6

Denise N. Martin, Vinita M. Juneja, Todd S. Foster,
Frederick C. Dunbar, *Recent Trends IV: What Explains Filings*
*and Settlements in Shareholder Class Actions?*
    (NERA Nov. 1996).................................................................................11

Richard Posner, *Economic Analysis of Law* (3d ed. 1986)
    §21.9.......................................................................................................9

Ronald I. Miller, Ph.D., Todd Foster, Elaine Buckberg, Ph.D.,
*Recent Trends in Shareholder Class Action Litigation:*
*Beyond the Mega-Settlements, is Stabilization Ahead?*
    (NERA Apr. 2006)...................................................................................8

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,*
    108 F.R.D. 237 (Oct. 8, 1985) ...............................................................4

Charles Silver, *CLASS ACTIONS IN THE GULF SOUTH SYMPOSIUM:*
*Due Process and the Lodestar Method: You Can't Get There from Here,*
    74 Tul. L. Rev. 1809 (June 2000) ...........................................................5

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic,
*Empirical Study of Class Actions in Four Federal District Courts:*
*Final Report to the Advisory Committee on Civil Rules,*
    (Federal Judicial Center 1996)..............................................................11

**LEGISLATIVE HISTORY**

H.R. Conf. Rep.
    No. 104-369 (1995), 1995 WL 709276 (1995)......................................15

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on December 16, 2010, at 9:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Susan Illston, United States District Judge, at the Phillip Burton United States Courthouse, Courtroom 10, 450 Golden Gate Avenue, San Francisco, California, Lead Plaintiff will and hereby does move for an award of attorneys' fees and expenses and Lead Plaintiff's expenses. This motion is based upon the Memorandum of Points and Authorities in Support of Lead Plaintiff's Motion for an Award of Attorneys' Fees and Expenses and Lead Plaintiff's Expenses set forth below, the Declaration of Daniel S. Drosman in Support of Lead Plaintiff's Motion for (1) Final Approval of Settlement; (2) Approval of the Plan of Allocation of Settlement Proceeds; and (3) Lead Counsel's Application for Attorneys' Fees and Expenses and Lead Plaintiff's Expenses ("Drosman Decl."), the Declaration of Keith F. Park Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, and the Declaration of Malcolm J. Auble as Representative of Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust in Support of Plaintiff's Motion for (1) Final Approval of Settlement; (2) Approval of the Plan of Allocation of Settlement Proceeds; and (3) Award of Attorneys' Fees and Expenses and Plaintiff's Expenses ("Auble Decl."), the Stipulation of Settlement dated as of August 30, 2010 (Dkt. No. 89) (the "Stipulation"),[1] all other pleadings and matters of record, and such additional evidence or argument as may be presented at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Lead Counsel have negotiated, and Lead Plaintiff supports, a settlement with the Defendants consisting of $31,250,000 in cash. For their efforts in achieving this result, Lead Counsel seek a fee[2]

---

[1] Capitalized terms not otherwise defined in this memorandum have the same meanings set forth in the Stipulation.

[2] The amount awarded will compensate Lead Counsel and may also be used to compensate counsel who have advised or worked with the Lead Plaintiff for the benefit of the Class or

1  of 24.5% of the gross Settlement Fund, slightly below the Ninth Circuit "benchmark" of 25%, plus
2  expenses of $247,924.15.

3  The Drosman Declaration details the work performed over the past 2-1/2 years for the benefit
4  of the Class, including an extensive pre-filing investigation, locating and interviewing potential
5  witnesses, successfully opposing, ultimately and in the main, Defendants' multiple motions to
6  dismiss, and conducting discovery, including the review and analysis of some 40,000 pages of
7  documents produced by The PMI Group, Inc. ("PMI" or the "Company"). Lead Counsel spent
8  considerable time and resources to develop a case that would survive the pleading requirements of
9  the Private Securities Litigation Reform Act of 1995 ("PSLRA") and convince the Defendants that
10  the Lead Plaintiff was prepared to pursue this matter to trial if necessary. A more detailed
11  description of the claims asserted by the Lead Plaintiff, as well as the efforts expended by Lead
12  Counsel, are set forth in the Drosman Declaration.

13  The 24.5% fee requested is fair and reasonable when considered under the applicable
14  standards and, as discussed below, is well within the normal range of awards made in contingent fee
15  securities class actions, particularly in view of the result achieved and the considerable risk attendant
16  in bringing and pursuing this Litigation. This case involved complex issues, including compliance
17  with technical accounting and financial reporting issues, proof of scienter, loss causation, and
18  damages. The legal issues presented a significant risk that, absent this settlement, Lead Plaintiff
19  would spend several more years litigating with the Defendants at sizable cost and would not obtain a
20  better recovery (or any recovery at all) for the Class. As important, the application is supported by
21  the Lead Plaintiff.

22  For the reasons set forth herein, and in the Drosman Declaration, it is respectfully submitted
23  that the requested attorneys' fees and expenses are fair and reasonable and should be awarded by this
24  Court.

25

26

27  contributed to the institution, prosecution, or resolution of the Litigation. The amount requested
   includes all such payments.

28

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI          - 2 -

## II. FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

The Drosman Declaration is an integral part of this submission. The Court is respectfully referred to it for a more detailed description of the factual and procedural history of the Litigation, the claims asserted, the extensive investigation and discovery undertaken, the settlement negotiations, as well as the numerous risks and uncertainties presented in this Litigation.

## III. AWARD OF ATTORNEYS' FEES

### A. The Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases Support the Requested Award

#### 1. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

For their efforts in creating a common fund for the benefit of the Class, Lead Counsel seek a reasonable percentage of the fund recovered as attorneys' fees. The percentage method of awarding fees has become an accepted, if not the prevailing method, for awarding fees in common fund cases in this Circuit and throughout the United States.

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). This rule, known as the "common fund" doctrine, is firmly rooted in American case law. *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).[3]

---

[3] In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit explained the principle underlying fee awards in common fund cases:

> Since the Supreme Court's 1885 decision in [*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885)], it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. The

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                                    - 3 -

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on the class." In this Circuit, the district court has discretion to award fees in common fund cases based on either the so-called lodestar/multiplier method or the percentage-of-the-fund method. *WPPSS*, 19 F.3d at 1296. In *Paul, Johnson*, 886 F.2d 268, *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), and *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002), the Ninth Circuit expressly approved the use of the percentage method in common fund cases. Moreover, supporting authority for the percentage method in other circuits is overwhelming.[4]

Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost uniformly shifted to the percentage method in awarding fees in common fund representative actions. The rationale for compensating counsel in common fund cases on a percentage basis is sound. First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery.[5] Second, it more closely aligns the

---

> amount of such a reward is that which is deemed "reasonable" under the circumstances.

*Id.* at 271 (citations omitted, emphasis in original).

[4]  Courts in other circuits favor the percentage-of-recovery approach for the award of attorneys' fees in common fund cases. Two circuits have ruled that the ***percentage method is mandatory in common fund cases***. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991). Other circuits and commentators have expressly approved the use of the percentage method. *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (citing footnote 16 of *Blum* recognizing both "implicitly" and "explicitly" that a percentage recovery is reasonable in common fund cases); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); and Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254 (Oct. 8, 1985).

[5]  Courts are encouraged to look to the private marketplace in setting a percentage fee:

> The judicial task might be simplified if the judge and the lawyers [spent] their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character. This was a contingent fee suit that yielded a recovery for the "clients" (the class members) of $45 million. The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.

lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.[6] Indeed, one of the nation's leading scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has concluded that the percentage method of awarding fees is the only method of fee awards that is consistent with class members' due process rights. Professor Silver notes:

> ***The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.*** It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges, including those who contributed to the Manual for Complex Litigation, the Report of the Federal Courts Study Committee, and the report of the Third Circuit Task Force. Indeed, it is difficult to find anyone who contends otherwise. No one writing in the field today is defending the lodestar on the ground that it minimizes conflicts between class counsel and absent claimants.

> ***In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund class actions.*** The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives. The contingent percentage approach accomplishes this.

Charles Silver, *CLASS ACTIONS IN THE GULF SOUTH SYMPOSIUM: Due Process and the Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809, 1819-20 (June 2000) (emphasis added, footnotes omitted).[7]

---

Suppose a large investor had sued Continental for securities fraud, and won $45 million. What would its lawyers have gotten pursuant to their contingent fee contract?

*In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). *See also Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at *40-*41 (N.D. Ill. Sept. 14, 1984).

[6] In *Kirchoff v. Flynn*, 786 F.2d 320, 325, 326 (7th Cir. 1986), the court stated:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains. . . . The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours. Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants. . . .

> At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

[7] Professor Coffee also argues that a percentage of the recovery is the only reasonable method of awarding fees in common fund cases:

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI          - 5 -

### 2. A Fee of 24.5 Percent of the Fund Created Is Reasonable

In *Paul, Johnson*, the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees. 886 F.2d at 272; *see also Torrisi*, 8 F.3d at 1376 (reaffirming 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same). The guiding principle in this Circuit is that a fee award be "'reasonable under the circumstances.'" *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted). In view of the result obtained, the contingent fee risk, and the financial commitment of Lead Counsel, an award of 24.5% of the recovery obtained for the Class, slightly below this benchmark and a percentage approved by the Lead Plaintiff, is appropriate.

### B. Consideration of the Relevant Factors Used by Courts in the Ninth Circuit Justifies a Fee Award of 24.5 Percent in This Case

Lead Counsel submit that, as the factors discussed below demonstrate, attorneys' fees of 24.5% of the fund recovered for the Class are reasonable under the circumstances of this case and should be approved.

### 1. The Result Achieved

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

---

> If one wishes to economize on the judicial time that is today invested in monitoring class and derivative litigation, the highest priority should be given to those reforms that restrict collusion and are essentially self-policing. The percentage of the recovery fee award formula is such a "deregulatory" reform because it relies on incentives rather than costly monitoring. Ultimately, this "deregulatory" approach is the only alternative . . . .

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 724-25 (May 1986).

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

- 6 -

1    A Settlement Amount of $31.25 million has been obtained through the efforts of Lead

2    Counsel without the necessity and risk of summary judgment proceedings, trial, and appeals. This

3    recovery is particularly noteworthy in light of PMI's recent financial performance and perceived

4    ability to satisfy a judgment for a larger amount. In March 2010, according to PMI's annual report

5    on Form 10-K, the Company reported net losses for the three years ending December 31, 2009,

6    2008, and 2007 of $659,326,000, $928,508,000, and $915,326,000, respectively. In its latest

7    quarterly report on Form 10Q, PMI reported net losses for the 3 month and 6 month period ended

8    June 30,2010 of $150,560,000 and $307,547,000, respectively. Not surprisingly, the entire amount

9    of the settlement is funded by insurance. There is no doubt that, under the circumstances present

10   here, Lead Counsel achieved a superior recovery for Class Members in this case and should be

11   awarded the fee requested to compensate them for such a favorable result.

12              **2.      The Risks of Litigation**

13   Numerous cases have recognized that risk is an important factor in determining a fair fee

14   award. *See, e.g., WPPSS*, 19 F.3d at 1299-1301; *Lindy Bros. Builders v. Am. Radiator & Standard*

15   *Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). Uncertainty that an ultimate recovery would be

16   obtained is highly relevant in determining risk. *WPPSS*, 19 F.3d at 1300; *Lindy*, 540 F.2d at 117.

17   As the court aptly observed in *King Resources*:

18              The litigation also involved unique and substantial issues of law in the
                technical area of SEC Rule 10b-5, . . . difficult, complex and oft-disputed class action
19              questions, and difficult questions regarding computation of damages.

20                                        * * *

21              In evaluating the services rendered in this case, appropriate consideration
                must be given to the risks assumed by plaintiffs' counsel in undertaking the
22              litigation. The prospects of success were by no means certain at the outset, and
                indeed, the chances of success were highly speculative and problematical.
23
     420 F. Supp. at 632, 636-37. *See also In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No.
24
     02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *44 (C.D. Cal. June 10, 2005) ("The risks
25
     assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a
26
     factor in determining counsel's proper fee award.").
27

28

1    As set forth in the Drosman Declaration, substantial risks and uncertainties were present from
2  the outset of this Litigation that made it far from certain that any recovery for the Class would be
3  obtained.  While courts have always recognized that securities class actions carry significant risks,
4  post-PSLRA rulings make it clear that the risk of no recovery (and hence no fee) has increased
5  exponentially.  Courts have noted that "securities actions have become more difficult from a
6  plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194
7  F.R.D. 166, 194 (E.D. Pa. 2000).  According to an April 2006 NERA study, dismissal rates have
8  doubled since the PSLRA, accounting for 40.3% of dispositions. *See* Ronald I. Miller, Ph.D., Todd
9  Foster, Elaine Buckberg, Ph.D., *Recent Trends in Shareholder Class Action Litigation: Beyond the*
10 *Mega-Settlements, is Stabilization Ahead?*, at 4 (NERA Apr. 2006).

11    When cases are dismissed, the typical result is a large loss for the plaintiffs' firms involved.
12 There is no question that, if not settled, Lead Counsel in this case faced the substantial risk of years
13 of additional litigation with no guarantee of any compensation, even if they prevailed on the merits.
14 Lead Counsel achieved a significant recovery for the Class in the face of very substantial risks.
15 Under these circumstances, the requested fee is fully justified.

16              **3.      The Skill Required and the Quality of the Work**

17    The successful prosecution of these complex claims required the participation of highly
18 skilled and specialized attorneys. *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *38 ("The
19 experience of counsel is also a factor in determining the appropriate fee award.").  From the outset,
20 Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Class.  Lead
21 Counsel demonstrated that, notwithstanding the barriers erected by the PSLRA and other recent
22 developments in the law, they would work to develop sufficient evidence to support a convincing
23 case.

24    Lead Counsel's thorough investigation and other litigation efforts ultimately defeated, in the
25 main, Defendants' motions to dismiss.  As a result of surviving the attacks on the adequacy of the
26 complaint, the substantial investigation undertaken, and subsequent initial discovery efforts, Lead
27 Counsel were positioned to negotiate a settlement with the Defendants they believe is fair under all
28 the circumstances.  The skill demonstrated by Lead Counsel supports the requested fee. *See, e.g.*,

*J.N. Futia Co. v. Phelps Dodge Indus., Inc.*, No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261 (S.D.N.Y. Sept. 17, 1982).

The quality of opposing counsel is also important in evaluating the quality of the work done by Lead Plaintiff's counsel. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *King Res.*, 420 F. Supp. at 634; *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974). The Defendants were represented by counsel from O'Melveny & Myers LLP, a law firm with an undisputed and well-deserved nationwide reputation for vigorous advocacy of their clients' interests.

### 4. The Novelty and Difficulty of the Questions Presented

Courts have recognized that the novelty and difficulty of the issues in a case are significant factors to be considered in making a fee award. *See, e.g., Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1306 (W.D. Wash. 2001); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). As the *Johnson* court stated:

> Cases of first impression generally require more time and effort on the attorney's part. Although this greater expenditure of time in research and preparation is an investment by counsel in obtaining knowledge which can be used in similar later cases, he should not be penalized for undertaking a case which may "make new law." Instead, he should be appropriately compensated for accepting the challenge.

488 F.2d at 718.

In addition to being factually and technically complex, this case also involved numerous complex questions of law under the PSLRA, in particular the application of *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), to the facts of this case. The application of *Dura* and subsequent cases that interpret it posed significant risks to Lead Plaintiff's ability to prevail on such issues as loss causation.

### 5. The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

Determination of a fair fee must include consideration of the contingent nature of the fee. It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                    - 9 -

may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in awarding counsel's attorneys' fees in *Prudential*, the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation. Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994).

Before plaintiffs' counsel commit to prosecute a securities class action on a contingent fee basis, an assessment of the strength of the case, the likelihood of a recovery, the probable size of damages, and the costs of litigating the case are weighed against the expectation of payment if successful. In this Circuit, plaintiffs' counsel expect to be paid a reasonable percentage of any recovery, usually in the range of 25% (absent a fee agreement with the client to seek a different amount). Plaintiffs' counsel's expectation about the likely fee, if successful, is part of the equation when determining whether to pursue a case.

Moreover, there are many class actions in which plaintiffs' counsel took the risk, expended thousands of hours, and yet received no remuneration whatsoever despite their diligence and expertise. For example, subsequent to the passage of the PSLRA, a high percentage of cases in this Circuit have been dismissed at the pleading stage in response to defendants' arguments that the complaints do not meet the PSLRA's strict pleading standards.

Indeed, because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result and that such result would only be realized after significant amounts of time, effort, and expense had been expended. Lead Counsel have received no compensation for their efforts during the course of this Litigation. Absent this settlement, there was

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

- 10 -

a sizeable risk that at the end of the day, Class Members, as well as their counsel, would obtain no recovery. Lead Counsel have risked non-payment of over $247,000.00 in expenses and approximately $1.6 million in time committed to this matter, knowing that if their efforts were not successful, no fees or expenses would be paid. *See, e.g., Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y.) (granting defendants' motion for judgment as a matter of law after jury verdict for plaintiff), *aff'd sub nom. Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000).

> **6.     A 24.5 Percent Fee Award Is Below the Average Fee Awarded in Similar Complex Class Action Litigation**

A Federal Judiciary Center study released in 1996, which covered all class actions in four selected federal district courts with a high number of class actions, including this District, found that as to the size of attorneys' fees: "Median rates ranged from 27% to 30%." Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Federal Judicial Center 1996). This finding is in line with an analysis of fee awards in class actions conducted in 1996 by National Economic Research Associates, an economics consulting firm. Using data from 433 shareholder class actions, the study concludes: "Regardless of case size, fees average approximately 32 percent of the settlement." Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?*, at 12-13 (NERA Nov. 1996). More recently, in *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298 (3d Cir. 2005), the Third Circuit recently cited with approval an analysis submitted by Professor John C. Coffee of Columbia University, in which he considered statistical data regarding fee awards from other securities class actions and found (1) a 27%-30% median fee range over the course of a two-year period in selected federal district courts; and (2) 25%-30% fees were "'fairly standard'" even in "'mega fund'" class actions. *Id.* at 298 (citation omitted). The fee requested is slightly less than the range in the cases on which these studies were based.

Further, the fee requested is supported by fee awards at or above the Ninth Circuit benchmark in other class action cases:

- *In re UTStarcom, Inc. Sec. Litig.*, Master File No. C-04-4908-JW(PVT), slip op. (N.D. Cal. August 31, 2010) (awarding 24.5% of a $30 million recovery, plus expenses);

- *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (affirming 28% fee award of $96.885 million recovery);

- *Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *61 (C.D. Cal. June 10, 2005) (awarding one-third of $27.783 million settlement);

- *In re Terayon Commc'n Sys., Inc. Sec. Litig.*, No. C-00-1967-MHP, slip op. (N.D. Cal. Oct. 3, 2007) (awarded 30% of $15 million recovery, plus expenses);

- *In re THQ, Inc. Sec. Litig.*, No. CV-00-01783-JFW(Ex), slip op. (C.D. Cal. June 23, 2003) (fee equal to 30% of $10.15 million recovery, plus expenses);

- *In re HI/FN, Inc. Sec. Litig.*, No. C-99-4531-SI, slip op. (N.D. Cal. May 20, 2003) (fee equal to 30% of recovery $6.8 million cash and 270,000 shares, plus expenses);

- *In re Brocade Sec. Litig.*, No. C 05-02042 CRB, slip op. (N.D. Cal. Jan. 26, 2009) (awarded 25% of $160 million recovery, net of expenses);

- *In re Wireless Facilities, Inc. Sec. Litig.*, No. 04cv1589 NLS, slip op. (S.D. Cal. Jan. 13, 2009) (awarded 25% of $12 million recovery, plus expenses);

- *In re PETCO Corp. Sec. Litig.*, No. 05-CV-0823 H(RBB), slip op. (S.D. Cal. Sept. 2, 2008) (awarded 25% of $20.25 million recovery, plus expenses);

- *In re Alliance Gaming Corp. Sec. Litig.*, No. CV-S-04-0821-BES-PAL, slip op. (D. Nev. June 28, 2007) (awarding 25% of $15.5 million recovery, plus expenses);

- *In re Verisign, Inc. Sec. Litig.*, No. C-02-2270-JW(PVT), slip op. (N.D. Cal. Apr. 24, 2007) (awarding 25% of $80 million recovery, plus expenses);

- *In re Surebeam Corp. Sec. Litig.*, No. 03-CV-01721-JM(POR), slip op. (S.D. Cal. July 17, 2006) (awarded 25% of $32.75 million recovery, plus expenses);

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

- 12 -

- *In re Titan, Inc. Sec. Litig.*, No. 04-CV-0676-LAB(NLS), slip op. (S.D. Cal. Dec. 20, 2005) (fee award equal to 25% of $61.5 million recovery, plus expenses);

- *In re Intermune, Inc. Sec. Litig.*, No. C-03-2954-SI, slip op. (N.D. Cal. Aug. 26, 2005) (fee award equal to 25% of $10.4 million recovery; plus expenses);

- *In re TUT Systems, Inc. Sec. Litig.*, No. C-01-2659-CW, slip op. (N.D. Cal. May 14, 2004) (fee equal to 25% of $10 million recovery, plus expenses);

- *In re Specialty Labs., Inc. Sec. Litig.*, No. CV 02-04352-DDP(RCx), slip op. (C.D. Cal. Dec. 22, 2004) (fee award equal to 25% of $12 million recovery, plus expenses); and

- *In re Infonet Servs. Corp. Sec. Litig.*, No. CV-01-10456-NM(CWx), slip op. (C.D. Cal. July 26, 2004) (fee equal to 25% of $18 million recovery, plus expenses).

The fees paid in these comparable cases support the 24.5% fee award requested.

### 7. The Customary Fee

Circuit courts and scholars have encouraged the "mimic the market" approach in setting fees in common fund class action cases. The Seventh Circuit, for example, has consistently taken this approach. *See Cont'l Ill.*, 962 F.2d at 568 ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order."); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) ("A court must give counsel the market rate for legal services.").

Courts often look at fees awarded in comparable cases to determine if the fee requested is reasonable. *Vizcaino*, 290 F.3d at 1050 n.4. If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *Blum*, 465 U.S. at 903* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (concurring); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *22 (S.D. Cal. Aug. 30, 1990) ("In private

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

- 13 -

contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *Ikon*, 194 F.R.D. at 194 (same). Thus, the customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is much higher than the percentage fee requested in this case.[8]

The customary fee in contingent litigation supports a fee award of 24.5% as fair and reasonable.

8. **Reaction of the Class and the Approval of the Requested Percentage by the Lead Plaintiff Supports the Award of a 24.5 Percent Attorneys' Fee**

The Court-approved notice was disseminated to potential Class Members and nominees commencing on September 17, 2010 and the Court-approved summary notice was published in *Investor's Business Daily* on September 21, 2010. To date, no objections to the requested amount of attorneys' fees and expenses have been received.[9] The Third Circuit recently noted that a low level of objections is a "'rare phenomenon.'" *Rite Aid*, 396 F.3d at 305 (citation omitted). Moreover, a small number of objections do not stand in the way of approval of a reasonable fee. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

At least as important as the reaction of the Class is the fact that this request has been approved by the Court-appointed Lead Plaintiff. *See* Auble Declaration. As discussed below, the

---

[8] Professor Conte acknowledged the propriety of adequately compensating counsel based on the result obtained in common fund cases:

> [C]ourts have been careful to award a fully compensable reasonable fee based on the underlying economic inducement for class action lawyers to pursue potentially expensive or complex common fund class litigation. These lawyers assume the risk of no compensation unless they successfully confer common fund benefits on the class, based on their reasonable expectation that they will share in the recovery in a fair proportion, in contrast to receiving a fee based initially on time-expended criteria that fail to give the ***results obtained*** factor primary consideration.

1 Alba Conte, *Attorney Fee Awards* §1.09, at 16 (2d ed. 1993) (emphasis in original).

[9] The last day to file an objection is November 5, 2010. If any objections are received, Lead Counsel will address them in a reply brief to be filed on or before November 15, 2010.

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

- 14 -

request is thus presumptively reasonable. The Lead Plaintiff, an institutional investor with significant financial stakes in the outcome of the Litigation, is a paradigm fiduciary for the Class as envisioned by Congress when it enacted the PSLRA.[10] "[C]ourts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004) ("[I]n class action cases under the PSLRA, courts presume fee requests submitted pursuant to a retainer agreement negotiated at arm's length between lead plaintiff and lead counsel are reasonable."). Here, the Lead Plaintiff has approved the requested fee and expenses. The fact that the fee has been approved should be given significant weight. *Cendant*, 264 F.3d at 282. This concept was recently reiterated: "In *Cendant*, 264 F.3d 201, we noted, under the Private Securities Litigation Reform Act, the aim of the fee award analysis 'is not to assess whether the fee request is reasonable,' but 'to determine whether the presumption of reasonableness has been rebutted.'" *Rite Aid*, 396 F.3d at 301 n.10 (quoting *Cendant*, 264 F.3d at 284).

## IV.   THE FEE AWARD SHOULD BE 24.5 PERCENT OF THE GROSS SETTLEMENT FUND

The overarching principle in this Circuit regarding fees is that the fee award must be reasonable under all of the circumstances of a case, not whether it is calculated on the gross or net settlement fund. *WPPSS*, 19 F.3d at 1296; *Vizcaino*, 290 F.3d at 1048. Moreover, the Ninth Circuit has approved calculation of a fee award using the gross settlement amount. *Powers*, 229 F.3d at 1258 ("the district court may calculate the fee award using the gross settlement amount").

---

[10]    Congress enacted the PSLRA in large part to encourage institutional investors to assume control of securities class actions and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." *See* H.R. Conf. Rep. No. 104-369, at 731 (1995), 1995 WL 709276, at *32 (1995); *see also In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999). Congress believed that institutions and other investors with a significant financial stake in the outcome of a securities class action would be in the best position to monitor the ongoing prosecution of the litigation, select counsel, and to assess the reasonableness of counsel's fee request.

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI

As explained above, 24.5% of the gross Settlement Fund is a reasonable fee under the circumstances of this case. Consideration of the length of the case, the contingent risk taken by Lead Counsel, the result achieved, the awards in similar cases where fees were based on the gross amount of the fund, and the support of the Lead Plaintiff for the amount requested all support the fee requested. Deducting expenses before calculating a fee award would result in a fee that represents an even further downward departure from the Ninth Circuit benchmark, which is, itself, based on the gross settlement fund. *See Vizcaino*, 290 F.3d at 1052 n.14, 1053 n.21.

## V.    THE REQUESTED EXPENSES SHOULD BE AWARDED

### A.    Lead Counsel's Expenses are Reasonable and were Necessarily Incurred to Achieve the Benefit Obtained

Lead Counsel have incurred expenses of $247,924.15 in prosecuting the Litigation. These expenses are set forth in the Park Declaration submitted to the Court herewith.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular expenses are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted). *See also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). Therefore, it is proper to award reasonable expenses even though they are greater than taxable costs. *Id. See also Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if they would normally be billed to client); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (citation omitted). The categories of expenses counsel seek are the type of expenses routinely charged to hourly paying clients and, therefore, should be awarded out of the common fund.

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                                      - 16 -

1     Over half of the amount of expenses sought consists of payments to investigators,

2   consultants, and/or experts. The use of investigators in the post-PSLRA passage era is simply not

3   optional. The investigators were a vital part of the process of identifying, locating, and interviewing

4   potential witnesses. Lead Counsel were also required to retain experts and/or consultants in areas of

5   the mortgage insurance industry, market efficiency, materiality, loss causation, and damages. These

6   experts and/or consultants were important in the process of defending the complaints in response to

7   motions to dismiss, establishing that class certification was appropriate, and calculating damages for

8   settlement negotiations.

9     Another expense was the cost of computerized research. These are the charges for

10  computerized factual and legal research services such as LexisNexis and Westlaw. It is standard

11  practice for attorneys to use LexisNexis and Westlaw to assist them in researching legal and factual

12  issues and payment is proper. *See Media Vision*, 913 F. Supp. at 1371. Indeed, courts recognize that

13  these tools create efficiencies in litigation and, ultimately, save clients and the class money. *See*

14  *Cont'l Ill.*, 962 F.2d at 570. In approving expenses for computerized research, the court in *Gottlieb*

15  *v. Wiles*, 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd on other grounds sub nom. Gottlieb v. Barry*,

16  43 F.3d 474 (10th Cir. 1994), underscored the time-saving attributes of computerized research as a

17  reason payment of these expenses should be encouraged. The court also noted that fee-paying

18  clients routinely pay counsel for computerized legal and factual research. *Id.*

19    In addition, certain counsel were required to travel in connection with this case. The

20  expenses in this category are reasonable in amount, and are properly charged against the fund

21  created. *See Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated on other*

22  *grounds*, 461 U.S. 952 (1983); *In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp.

23  733, 746 (S.D.N.Y. 1994); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84,

24  86 (S.D.N.Y. 1990).

25    Photocopying costs are also customarily paid in common fund cases. *See McDonnell*

26  *Douglas*, 842 F. Supp. at 746. Duplication of documents produced in discovery and pleadings was

27  necessary for the effective prosecution of this case.

28

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND
MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                                    - 17 -

Other categories include expenses for filing, service and witness fees, court/deposition fees, postage, long distance and facsimile fees, overnight delivery services, mediation fees, and the publication of the notice required by the PSLRA. All were necessary and reasonable and should be awarded.

**B.     Lead Plaintiff's Expenses in Representing the Class Should be Awarded**

Under the PSLRA, the Court may award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). The Lead Plaintiff seeks payment for the time it spent and expenses incurred representing the Class. Malcolm J. Auble as representative of Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust ("Operating Engineers") has submitted a declaration supporting $1,416.00 in expenses incurred in representing the Class. This amount is reasonable and should be approved.[11]

## VI.     CONCLUSION

From the beginning, Lead Plaintiff was faced with determined adversaries represented by experienced counsel. Without any assurance of success, Lead Plaintiff and Lead Counsel pursued this Litigation against the Defendants to a successful conclusion. Accordingly, for the reasons set forth above and in the Drosman Declaration, the Court should award Lead Counsel attorneys' fees of

---

[11]     As set forth in the notice sent to the Class, this amount is in addition to the expenses sought by Lead Counsel.

579865_1

LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT THEREOF - 3:08-cv-01405-SI                    - 18 -

1   24.5% of the gross Settlement Fund and expenses of $247,924.15 and expenses for Operating

2   Engineers in the amount of $1,416.00.

3   DATED: October 8, 2010                    Respectfully submitted,

4                                             ROBBINS GELLER RUDMAN
                                                & DOWD LLP
5                                             KEITH F. PARK
                                              DANIEL S. DROSMAN
6

7                                                       s/ Keith F. Park
8                                                     KEITH F. PARK

9                                             655 West Broadway, Suite 1900
                                              San Diego, CA 92101
10                                            Telephone: 619/231-1058
                                              619/231-7423 (fax)
11
                                              ROBBINS GELLER RUDMAN
12                                              & DOWD LLP
                                              DANIEL J. PFEFFERBAUM
13                                            Post Montgomery Center
                                              One Montgomery Street, Suite 1800
14                                            San Francisco, CA 94104
                                              Telephone: 415/288-4545
15                                            415/288-4534 (fax)

16                                            Lead Counsel for Lead Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I further certify that I caused this document to be forwarded to the following Designated Internet Site at: http://securities.stanford.edu.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 8, 2010.

 s/ Keith F. Park
KEITH F. PARK

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail:KeithP@rgrdlaw.com

# Mailing Information for a Case 3:08-cv-01405-SI

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Daniel S. Drosman**
  DanD@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Lawrence Timothy Fisher**
  ltfisher@bramsonplutzik.com,dschroeder@bramsonplutzik.com

- **Catherine J. Kowalewski**
  katek@rgrdlaw.com

- **Meredith N. Landy**
  mlandy@omm.com,vtran@omm.com,sfolchi@omm.com,mpaul@omm.com,jcoakley@omm.com

- **Jeffrey W. Lawrence**
  jeffreyl@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,jdecena@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Keith F. Park**
  keithp@rgrdlaw.com,karnold@rgrdlaw.com,jstark@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,khuang@rgrdlaw.com,gfreemon@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com

- **Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees Represented by Local 85 of the Amalgamated Transit Union**
  sward@barrack.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Samuel M. Ward**
  sward@barrack.com,lxlamb@barrack.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,jdecena@rgrdlaw.com,e_file_sf@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Alan R. Plutzik
Barroway Topaz Kessler Meltzer & Check LLP
2125 Oak Grove Road
Suite 120
Walnut Creek, CA 94598

Dhaivat H. Shah
O'Melveny & Myers LLP
2765 Sand Hill Road
Menlo Park, CA 94025
```